SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
Robert D. Drain
One Manhattan West
New York, New York 10001
Telephone: (212) 735-3000
Fax: (212) 735-2000

– and –

Justin M. Winerman (*pro hac vice*
admission pending)
320 S. Canal Street
Chicago, Illinois 60606-5707
Telephone: (312) 407-0700
Fax: (312) 407-0411

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM (UK) LLP
Peter Newman
Nicole Stephansen
22 Bishopsgate
London EC2N 4BQ
Telephone: +44 20 7519 7000
Fax: +44 20 7519 7070

*Counsel to the Debtor*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In re*<br><br>FLEMING INTERNATIONAL REINSURANCE LTD.,<br><br>Debtor in Foreign Proceeding.[1] | Chapter 15<br><br>Case No. 25-12353 (JPM) |

**VERIFIED PETITION FOR (I) RECOGNITION**
**OF FOREIGN MAIN PROCEEDING, (II) RECOGNITION OF**
**FOREIGN REPRESENTATIVES, AND (III) CERTAIN RELATED RELIEF**

Simon Appell and Daniel Imison of AlixPartners UK LLP and Mathew Clingerman

of Kroll Bermuda Limited, in their capacities as the joint provisional liquidators and authorized

foreign representatives (in such capacities, the "**JPLs**" or the "**Foreign Representatives**") of the

---

[1] The Debtor is a Bermuda company registered with the Registrar of Companies in Bermuda. The Debtor's registration number is 41041. The Debtor has its registered office located at Clarendon House, 2 Church Street, Hamilton, HM11, Bermuda.

above captioned foreign debtor (the "**Debtor**") respectfully submit this verified petition (together with the Debtor's official form petition filed concurrently herewith, the "**Verified Petition**"), filed at the JPLs' request by and through the Debtor's undersigned counsel, seeking chapter 15 recognition of a provisional liquidation proceeding currently pending before the Supreme Court of Bermuda (the "**Bermuda Court**"), under Part XIII of the Companies Act 1981 (as amended, the "**Bermuda Companies Act**"), Companies (Winding Up) Commercial Court, 2025: No. 270 (the "**Bermuda Proceeding**"), and represent as follows:

## RELIEF REQUESTED

1.      The Foreign Representatives request entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Recognition Order**") (a) granting recognition of the Bermuda Proceeding as a foreign main proceeding pursuant to section 1517(b)(1) of title 11 of the United States Code (the "**Bankruptcy Code**"), or, in the alternative, as a foreign nonmain proceeding pursuant to Bankruptcy Code section 1517(b)(2); (b) recognizing each of the Foreign Representatives as a "foreign representative," as defined in Bankruptcy Code section 101(24) in respect of the Bermuda Proceeding; and (c) granting certain related relief.

2.      In support of this Verified Petition, the Foreign Representatives refer the Court to the (a) *Declaration of Daniel Imison in Support of the Verified Petition for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representatives, and (III) Certain Related Relief* (the "**Imison Declaration**"); the (b) *Declaration of Kevin Taylor in Support of the Verified Petition for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representatives, and (III) Certain Related Relief* (the "**Taylor Declaration**"); and the (c) *Declaration of Eric Haller in Support of (I) the Verified Petition, (II) Motion for Entry of Orders Granting (A) Emergency Ex Parte Relief and (B) Provisional Relief, Pursuant to Bankruptcy Code*

*Section 1519, and (III) the Scheduling Motion* (the "**Haller Declaration**"), each of which have

been filed contemporaneously herewith and are incorporated herein by reference.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction to consider the Verified Petition pursuant to 28 U.S.C.

§§ 157 and 1334 and the *Amended Standing Order of Reference M-431,* dated January 31, 2012

(Preska, C.J.). This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(P). Venue is proper

under 28 U.S.C. § 1410.

4.      This chapter 15 case (the "**Chapter 15 Case**") has been properly commenced

pursuant to Bankruptcy Code section 1504 by the filing of this Verified Petition for recognition of

the Bermuda Proceeding under Bankruptcy Code section 1515(a) on behalf of the Debtor and the

exhibits hereto under Bankruptcy Code section 1515(b)-(c).

5.      The legal predicates for the relief requested herein are Bankruptcy Code sections

105, 1504, 1507, 1510, 1515, 1517, 1520, 1521, and 1522, and rule 9013-1(a) of the Local

Bankruptcy Rules for the Southern District of New York (the "**Local Bankruptcy Rules**").

## BACKGROUND

**I.      The Debtor and Its Group Structure**

6.      The Debtor is an exempted company incorporated under the Bermuda Companies

Act. It was previously known as JRG Reinsurance Company, Ltd. ("**JRG Re**"). Haller Decl. ¶ 13.

7.      The Debtor is a Class 3B insurer registered pursuant to the Bermuda Insurance Act

1978 (the "**Insurance Act**"). Haller Decl. ¶ 14. It is the wholly owned subsidiary of Jaguar

Holdings LLC ("**Jaguar**"), a limited liability company ("**LLC**") registered in Bermuda. *Id.* Jaguar

is itself the wholly owned subsidiary of Fleming Intermediate Holdings LLC ("**FIH**"), which is an

LLC registered in the Cayman Islands. *Id.* Jaguar is currently the subject of a pending involuntary

winding-up petition under the Bermuda Companies Act brought by its primary lender. *Id.*

8.      FIH, its direct parent and certain of its indirect parent entities are collectively referred to herein as the "**Fleming Group**" or "**Fleming**" unless otherwise indicated. Haller Decl. ¶ 15.

## II.     The Debtor's Business

9.      The Debtor's primary business consists of acting as an assuming reinsurer of reinsurance business ceded to it by approximately 50 ceding insurance companies (the "**Ceding Insurers**"). Haller Decl. ¶ 17.

10.     The Debtor's Certificate of Registration prevents it from writing any "insurance business" as defined by the Insurance Act. Haller Decl. ¶ 18. The Debtor is permitted under its license and applicable regulatory guidance only to write retroactive reinsurance. *Id.* In essence, the Debtor covers the Ceding Insurers' already-incurred liabilities mostly in relation to long-tail lines (where claims are typically reported and paid out over an extended period) in the casualty space through structures such as, for example, loss portfolio transfers ("**LPTs**"). *Id.* By so taking on prior liabilities, rather than future exposure, the Debtor offers the Ceding Insurers balance sheet relief, capital efficiency, and claims finality or partial finality. *Id.*

## III.    Overview of the Debtor

### A.      Location of the Debtor's Registered Office, Domicile, and Headquarters

11.     **Incorporated in Bermuda.** The Debtor is incorporated in Bermuda and continues to exist in accordance with the laws of Bermuda. Imison Decl. ¶ 23.

12.     **Registered Office and Headquarters in Bermuda.** The Debtor's registered office is at Clarendon House, 2 Church Street, Hamilton, HM11, Bermuda. Under Bermuda law, the situs of shares in a company is at the registered office of the company at which the register of members should be kept, which in the case of the Debtor is Bermuda. *Id.*

13.     The physical location of the Debtor's corporate headquarters is at 19 Par-La-Ville Road, 2nd Floor, Hamilton, HM12, Bermuda. *Id.* ¶ 24(a).

14.     As noted, the Debtor's reinsurance business is regulated under Bermuda law. Haller Decl. ¶ 16.

**B.     Location of the Debtor's Management**

15.     **Management in Bermuda.** Most of the Debtor's central administration, management, and control takes place in Bermuda. Imison Decl. ¶ 24(b). In particular, the management team is primarily in Bermuda, including the CEO, Head of Mergers and Acquisitions, Chief Accounting Officer, Chief Risk Officer, and ILS Operations and Compliance. *Id.* Further, while the Debtor's board meetings are typically held telephonically, in-person board meetings are held in Bermuda. *Id.*

16.     **One of the JPLs in Bermuda.** The JPLs have been monitoring the Debtor's affairs since their appointment as JPLs pursuant to an order of the Bermuda court dated October 21, 2025 (the "**JPL Appointment Order**"). Haller Decl. ¶ 4. A true and correct copy of the JPL Appointment Order is attached as Exhibit B to the official chapter 15 form petition. One of the JPLs, Mr. Clingerman, resides in Bermuda. Imison Decl. ¶ 24(b).

**C.     Location of the Debtor's Primary Assets**

17.     The primary unrestricted assets of the Debtor include cash amounts held in bank accounts with The Bank of N.T. Butterfield & Son Limited in Bermuda. *Id.* ¶ 24(c).

**D.     Presence in Bermuda Marketplace**

18.     In addition to being a Bermuda-regulated entity, the Debtor has a presence in the Bermuda marketplace, including, but not limited to, the Debtor's registration with the Bermuda Monetary Authority as a reinsurer. *Id.* ¶ 24(d).

IV.     **Events Leading to the Chapter 15 Case**

A.     **The Stock Purchase Agreement**

19.     On November 8, 2023, FIH entered into a Stock Purchase Agreement ("**SPA**") with James River Group Holdings, Ltd. ("**James River**") to purchase the shares of JRG Re. Haller Decl. ¶ 20.

20.     On or about February 26, 2024, prior to the SPA's closing, JRG Re made distributions to James River in the aggregate amount of $139 million, representing both a return of capital and dividends (the "**Distributions**"). Haller Decl. ¶ 21. Prior to the SPA closing, FIH raised concerns about the Distributions and eventually, because of its concerns, FIH determined that it would not continue with the acquisition of JRG Re. *Id.* However, James River sought and obtained an order of the Supreme Court of the State of New York compelling FIH to close the transactions contemplated by the SPA. *Id.* Following the closing of the SPA, JRG Re was renamed as the Debtor. *Id.*

V.     **The Debtor's Financial Position**

21.     Since the closing of the SPA, the Debtor's financial condition has been challenged, principally because of the effects of (i) the Distributions and (ii) the enforcement of collateral escalation obligations, as further set forth below. Haller Decl. ¶ 22.

A.     **The Distributions**

22.     The capital outflow from the Distributions adversely affected the Debtor's financial position. Haller Decl. ¶ 23. The Distributions substantially constrained the Debtor's liquidity to pay its liabilities as they became due. *Id.* The JPLs and the Debtor reserve all rights and claims

with respect to the Distributions, including to pursue property related thereto within the territorial jurisdiction of the United States.[2] *Id.*

### B.    Collateral Escalation Obligations

23.    Before execution of the SPA, Fleming learned that a substantial majority of the Ceding Insurer's agreements included collateral escalation clauses. Haller Decl. ¶ 24. In general, such provisions require the reinsurer to post additional collateral if certain circumstances are triggered. *Id.* Fleming also learned that in December 2023, after the signing of the SPA but before the closing, that a triggering event under a Ceding Insurer's collateral escalation clause occurred but no additional collateral was provided at that time. *Id.* After the SPA's closing, the Debtor became obligated to comply with the enhanced collateral requirement. *Id.* The Debtor has provided some increase to the collateral and agreed with the Ceding Insurer that, instead of releasing excess collateral to the Debtor (as would typically occur in the ordinary course as the underlying liabilities amortized), the Ceding Insurer would retain any excess collateral on the conditions stated in such agreement. *Id.* This arrangement has deprived the Debtor of much needed liquidity and resulted in substantial economic loss. *Id.* The Ceding Insurer continues to allege that it is not fully collateralized under the terms of its collateral escalation clause. *Id.*

### C.    Efforts to Resolve the Debtor's Liquidity Problems

24.    From the closing of the JRG Re acquisition, management has focused extensively on resolving the foregoing liquidity issues and has been in ongoing discussions with certain of its Ceding Insurers. Haller Decl. ¶ 25. Notwithstanding these efforts, the Debtor is currently unable to pay its debts. *Id.* Further, on October 16, 2025, the primary creditor of Jaguar, the Debtor's

---

[2]    The JPLs also fully reserve their rights under Bankruptcy Code section 1510.

immediate holding company, filed an involuntary winding-up petition in Bermuda against Jaguar.
*Id.*

## VI. The Bermuda Proceeding

25.     On October 17, 2025, the Debtor's board of directors resolved to present the Winding-Up Petition (defined below) to commence the Bermuda Proceeding. Imison Decl. ¶ 8.

26.     On October 20, 2025, the Debtor commenced the Bermuda Proceeding by filing a winding-up petition (the "**Winding-Up Petition**") with the Bermuda Court. Haller Decl. ¶ 3.

27.     The Winding-Up Petition sought, among other things, the appointment of the JPLs as joint provisional liquidators of the Debtor with limited "light-touch" powers. Imison Decl. ¶ 10. The appointment of a provisional liquidator or the making of a winding-up order brings into effect an automatic statutory stay of actions and proceedings against the Debtor and its property in Bermuda to the extent provided for in Bermuda law during the pendency of the Bermuda Proceeding, with the effect that actions may not be commenced or continued against the Debtor without leave of the Bermuda Court and subject to such terms as the Bermuda Court may impose. Taylor Decl. ¶ 30; Imison Decl. ¶ 10.

28.     On October 21, 2025, the Bermuda Court issued the JPL Appointment Order appointing Simon Appell, Daniel Imison, and Mathew Clingerman as the JPLs. Haller Decl. ¶ 4; Imison Decl. ¶ 11.

29.     The JPL Appointment Order appointed the JPLs as the Debtor's authorized foreign representatives, including for the purpose of chapter 15 under the Bankruptcy Code, and authorized the JPLs, "if deemed necessary or appropriate, or both, by the JPLs, to apply to any foreign court (wherever situated) for recognition of their appointment or in connection with any other proceedings to take advantage of any insolvency or bankruptcy protection that such foreign law, procedures, or proceedings may provide" to the Debtor. JPL Appointment Order ¶ 1(h); Haller

Decl. ¶ 7; Imison Decl. ¶ 12. In addition, the JPL Appointment Order authorized the JPLs "to seek recognition of the provisional liquidation or the appointment of the JPLs, or both, in any jurisdiction the JPLs consider necessary or appropriate, or both, together which such other relief the JPLs may consider necessary or appropriate, or both, for the proper exercise of their functions within those jurisdictions and to make applications to the court(s) of such jurisdiction for that purpose." JPL Appointment Order ¶ 1(i); Haller Decl. ¶ 8(f).

### BASIS FOR RELIEF REQUESTED AND APPLICABLE AUTHORITY

30.     Section 1517 of the Bankruptcy Code identifies the requirements for recognition of a foreign proceeding. It provides that an order recognizing a foreign proceeding shall be entered if (1) such foreign proceeding is a foreign main proceeding or foreign nonmain proceeding within the meaning of section 1502; (2) the foreign representative applying for recognition is a person or body; and (3) the petition meets the requirements of Bankruptcy Code section 1515. *See* 11 U.S.C. § 1517(a). Recognition is mandatory if all three requirements of section 1517(a) are met. *See id.*; *In re Millard*, 501 B.R. 644, 653-54 (Bankr. S.D.N.Y. 2013).

31.     As set forth below, the Foreign Representatives have satisfied the foregoing requirements for recognition of the Bermuda Proceeding.

**I.      The Debtor is Eligible to be a "Debtor" Under Chapter 15 of the Bankruptcy Code.**

32.     **Eligible Entities**. As a threshold matter, the Debtor is eligible to be a debtor in a chapter 15 case. For the purposes of a case under chapter 15, a "debtor" means an entity that is the subject of a foreign proceeding. *See* 11 U.S.C. § 1502(1). An entity, in turn, includes any person. *See* 11 U.S.C. § 101(15). And a person includes a corporation. Here, the Debtor is incorporated under the laws of Bermuda. *See id.* §§ 101(15), (41); Taylor Decl. ¶ 34; Haller Decl. ¶ 13; Imison Decl. ¶ 15. As shown below, the Debtor is in a foreign proceeding. In addition, the Debtor does not fall within any of the categories of entities excluded from chapter 15 eligibility, as set forth in

section 1501(c). Accordingly, the Debtor is a debtor eligible for chapter 15 relief under the Bankruptcy Code. *See* 11 U.S.C. §§ 1501(b), (c).

33.    **Property in the United States**. Moreover, the Debtor is an eligible chapter 15 debtor under Bankruptcy Code section 109(a). Section 109(a) provides: "Notwithstanding any other provision of this section, only a person that resides or has a domicile, a place of business, *or property* in the United States, or a municipality, may be a debtor under this title." 11 U.S.C. § 109(a) (emphasis added). Courts in this circuit have applied Bankruptcy Code section 109(a) to chapter 15 eligibility. *See, e.g.*, *Drawbridge Special Opportunities Fund LP v. Barnet (In re Barnet)*, 737 F.3d 238, 247 (2d Cir. 2013) ("Section 103(a) makes all of Chapter 1 applicable to Chapter 15. Section 109(a)—within Chapter 1—creates a requirement that must be met by any debtor").[3]

34.    Decisions interpreting Bankruptcy Code section 109(a) as applied to foreign debtors under other chapters of the Bankruptcy Code unanimously hold that a debtor satisfies the section 109 requirement even when it only has a nominal amount of property in the United States. *See GMAM Inv. Funds Tr. I v. Globo Comunicacoes e Participacoes S.A. (In re Globo Comunicacoes e Participacoes S.A.)*, 317 B.R. 235, 249 (S.D.N.Y. 2004) (stating that courts have repeatedly found that there is "virtually no formal barrier" to having federal courts adjudicate foreign debtors' bankruptcy proceedings (citing *In re Aerovias Nacionales de Colom. S.A. (In re Aviane)*, 303 B.R. 1, 9 (Bankr. S.D.N.Y. 2003))). Effectively, if a debtor has any property in the United States, Bankruptcy Code section 109(a) is satisfied.

---

[3]    Bankruptcy Code section 1501(c)(1) specifically provides that chapter 15 applies to "a foreign insurance company" notwithstanding Bankruptcy Code section 109(b).

35.     For example, courts have held that bank accounts held in the United States and attorney retainers deposited in the United States, among other things, satisfy the "property in the United States" eligibility requirement of Bankruptcy Code section 109(a). *See In re Ocean Rig UDW Inc.*, 570 B.R. 687, 700 (Bankr. S.D.N.Y. 2017) (citing a retainer held by New York counsel in a New York account as a factor satisfying Bankruptcy Code section 109(a)), *appeal dismissed*, 585 B.R. 31 (S.D.N.Y. 2018), *aff'd*, 764 F. App'x 46 (2d Cir. 2019); *In re U.S. Steel Can. Inc.*, 571 B.R. 600, 611 (Bankr. S.D.N.Y. 2017) (granting recognition of a case where the foreign representative had cited the presence of a retainer in New York); *In re Octaviar Admin. Pty Ltd.*, 511 B.R. 361, 373–74 (Bankr. S.D.N.Y. 2014) (finding that the debtor "had property in the United States in the form of a retainer . . . that is sufficient to satisfy the requirements of section 109(a) of the Bankruptcy Code").

36.     Here, the Debtor satisfies the eligibility requirement of section 109(a), because the Debtor has property in the United States. Imison Decl. ¶ 16. Among other things, the Debtor has a reversionary interest, which may be substantial, in multiple trust agreements with the Ceding Insurers as grantor (the "**Reinsurance Trust Agreements**"). *Id.* In addition, certain of the Reinsurance Trust Agreements are governed by New York law, pursuant to which funds are held in the Trust Accounts in the United States. *Id.* On information and belief, there is likely equity value in all or substantially all the trusts, which will revert to the Debtor under certain circumstances. *Id.* The Debtor also has an interest in certain funds deposited with Skadden as a retainer for its services in connection with the Chapter 15 Case, which funds are held in a client trust account in New York. *Id.* Accordingly, the Debtor meets the general eligibility requirement of Bankruptcy Code section 109(a).

II. **The Requirements of Section 1517(a) of the Bankruptcy Code Are Satisfied and Thus Recognition of the Bermuda Proceeding as a "Foreign Main Proceeding" and of the Foreign Representatives Is Appropriate.**

37.     As outlined above, under section 1517(a) of the Bankruptcy Code and subject to the public policy exception contained in section 1506, a foreign proceeding must be granted chapter 15 recognition if each of the following three requirements are met: "(1) such foreign proceeding . . . is a foreign main proceeding or foreign nonmain proceeding within the meaning of section 1502; (2) the foreign representative applying for recognition is a person or body; and (3) the petition meets the requirements of section 1515." 11 U.S.C. § 1517(a). As set forth below, the Foreign Representatives satisfy each of the requirements of section 1517(a), and, therefore, the Bermuda Proceeding should be recognized.

A. **The Bermuda Proceeding Is A Foreign Proceeding.**

38.     The Bermuda Proceeding satisfies the definition of a "foreign proceeding" set forth in Bankruptcy Code section 101(23). *See* 11 U.S.C. § 101(23). Specifically, Bankruptcy Code section 101(23) defines a "foreign proceeding" as:

> a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

*See id.*

39.     Courts in this district have previously recognized Bermuda proceedings such as the Bermuda Proceeding as a "foreign proceeding." *See, e.g.*, *In re Digicel Int'l Fin. Ltd.*, No. 23-11625 (JPM) (Bankr. S.D.N.Y. Nov. 9, 2023) (recognizing Bermuda scheme of arrangement as "foreign proceedings"); *In re Digicel Grp One Ltd.*, Case No. 20-11207 (SCC) (Bankr. S.D.N.Y. June 17, 2020) (recognizing Bermuda provisional liquidation as "foreign proceedings"); *In re Culligan Ltd.*, No. 20-12192 (JLG), 2021 WL 2787926, at *8 (Bankr. S.D.N.Y. July 2, 2021)

(recognizing Bermuda liquidation proceedings); *In re VL Assurance (Bermuda) Ltd.*, No. 21-10682 (MG) (Bankr. S.D.N.Y. May 17, 2021) (recognizing Bermuda liquidation proceedings); *In re PB Life & Annuity Co.*, No. 20-12791 (SCC) (Bankr. S.D.N.Y. Jan. 5, 2021) (recognizing Bermuda provisional liquidation of insurance companies); *In re Spencer Cap. Holdings Ltd.*, No. 20- 12287 (JLG) (Bankr. S.D.N.Y. Nov. 24, 2020) (recognizing Bermuda provisional liquidation); *In re Digicel Grp. One Ltd.*, No. 20-11207 (SCC) (Bankr. S.D.N.Y. June 17, 2020) (recognizing Bermuda provisional liquidation and scheme of arrangement); *In re PDV Ins. Co.*, No. 18-12216 (MEW) (Bankr. S.D.N.Y Aug. 30, 2018) (recognizing Bermuda provisional liquidation).

40.     As with those proceedings under the Bermuda Companies Act, the Bermuda Proceeding meets all of the elements of the definition of a "foreign proceeding" under the Bankruptcy Code. In any event, as further set forth in the Imison Declaration and the Taylor Declaration, the facts here support a finding that the Bermuda Proceeding constitutes a "foreign proceeding" for the purposes of Bankruptcy Code section 101(23) because it is a proceeding that, among other things, is (a) either judicial or administrative in character, (b) collective in nature, (c) in a foreign country, (d) authorized or conducted under a law related to insolvency or the adjustment of debts, (e) in which the debtor's assets and affairs are subject to the control or supervision of a foreign court, and (f) for the purpose of reorganization or liquidation. Each of these elements is addressed below.

### 1.     The Bermuda Proceeding Is a "Proceeding."

41.     ***First***, the Bermuda Proceeding is a "proceeding" within the meaning of Bankruptcy Code section 101(23). The hallmark of a "proceeding" is a "statutory framework that constrains a company's actions and that regulates the final distribution of a company's assets" and includes "acts and formalities set down in law so that courts, merchants and creditors can know them in

advance, and apply them evenly in practice." *In re Betcorp Ltd.*, 400 B.R. 266, 277–78 (Bankr. D. Nev. 2009).

42.    The Bermuda Proceeding is governed by the Bermuda Companies Act, a statutory framework that constrains a company's actions, regulates the final distribution of a company's assets, and includes acts and formalities set down in law so that courts, merchants, and creditors know them in advance. *See* Taylor Decl. ¶ 40. Specifically, as described in more detail in the Taylor Declaration, the Bermuda Companies Act specifies the acceptable procedures for commencing Bermuda liquidation proceedings and appointing provisional liquidators. *See id.* ¶¶ 26-31. The Bermuda Companies Act, as supplemented by Bermuda common law, also sets forth the permitted scope and powers of provisional liquidators. *See id.* ¶¶ 32-33. The Bermuda Proceeding is therefore a "proceeding" because the Bermuda Companies Act falls within the type of specific statutory framework described in the case law. *See, e.g.*, *In re Betcorp*, 400 B.R. at 277–78; Taylor Decl. ¶ 39.

### 2.    The Bermuda Proceeding Is Judicial or Administrative in Character.

43.    ***Second***, the Bermuda Proceeding is both administrative and judicial in character. In Bermuda, a provisional liquidator may be appointed in a compulsory winding-up immediately after the presentation of the petition for a winding-up order to a Bermuda court and before the making of such a winding-up order. *See* Taylor Decl. ¶ 29. Under Bermuda law, provisional liquidators are officers of the Bermuda Court and their role is usually to ascertain, oversee, and preserve the assets of a company. *Id.* ¶ 41. They are required to be independent from management and the company's creditors and other stakeholders and are required to behave in an even-handed fashion among creditors and other stakeholders. *Id.* The exercise of the JPLs' power is subject to the control and supervision of the Bermuda Court. *Id.* ¶ 42. Thus, while many of a provisional

liquidator's tasks are administrative in nature (*e.g.*, collecting, protecting, and realizing assets, reporting to the court and to creditors or members), Bermuda Proceedings are also judicial in character because they are conducted before and under the supervision of the Bermuda Court. *Id.*

### 3.    The Bermuda Proceeding is Collective in Nature.

44.    ***Third***, the Bermuda Proceeding is collective in nature in that it provides due process to all parties whose rights and interests will be directly impacted. *See* Taylor Decl. ¶ 43. A proceeding is "collective" if it considers the rights and obligations of all creditors or relevant parties to the proceedings. *See In re ABC Learning Ctrs. Ltd.*, 445 B.R. 318, 328 (Bankr. D. Del. 2010), *aff'd*, 728 F.3d 301 (3d Cir. 2013); *In re Betcorp*, 400 B.R. at 281; *see also In re ENNIA Caribe Holding N.V.*, 594 B.R. 631, 638 (Bankr. S.D.N.Y. 2018). When determining whether a proceeding is collective in nature, a court should examine both the law governing the foreign action and the parameters of the particular proceeding as defined in, for example, orders of a foreign tribunal overseeing the action. *In re Ashapura Minechem Ltd.*, 480 B.R. 129, 136 & n. 37, 141 & n. 85 (S.D.N.Y. 2012). "Other characteristics of a collective proceeding include: adequate notice to creditors under applicable foreign law, provisions for the distribution of assets according to statutory priorities, and a statutory mechanism for creditors to seek court review of the proceeding." *Id.* at 137. Some courts have concluded that a collective proceeding can exist even where creditors are not allowed to participate, so long as the proceeding otherwise considers the rights and obligations of all creditors. *In re ENNIA Caribe Holding N.V.*, 594 B.R. at 638–39.

45.    A Bermuda proceeding, like the Bermuda Proceeding, is also a collective proceeding because it is conducted for the benefit of a company's creditor or member body as a whole, and not just a single creditor or member. Taylor Decl. ¶ 43. Provisional liquidators have the duty to obtain and protect a company's property pursuant to the provisions of the Bermuda Companies Act, which further reflects the collective nature of Bermuda liquidation proceedings

generally. *Id.* The JPLs' duties include considering and, if warranted, pursuing with the Debtor a potential restructuring for the benefit of the Debtor's creditors and other stakeholders. *See id.* ¶ 32.

### 4.   The Bermuda Proceeding is Located in a Foreign Country.

46.     ***Fourth***, the Bermuda Proceeding is located in Bermuda. Following the commencement of the Bermuda Proceeding, the Bermuda Court exercised its authority by issuing the JPL Appointment Order on October 21, 2025. *See* Taylor Decl. ¶ 37; Imison Decl. ¶ 11; Haller Decl. ¶ 4. Consequently, the Bermuda Proceeding is currently pending before the Bermuda Court, the court responsible for the resolution of insolvency cases in Bermuda. *See* Taylor Decl. ¶ 44; Haller Decl. ¶ 4. Therefore, the Bermuda Proceeding is located in Bermuda, a foreign country.

### 5.   The Bermuda Proceeding Is Authorized or Conducted Under a Law Related to Insolvency or the Adjustment of Debts.

47.     ***Fifth***, the Bermuda Proceeding currently is authorized and conducted under the Bermuda Companies Act, which is the Bermudian law that governs the insolvency of companies in Bermuda. *See* Taylor Decl. ¶ 45. More specifically, such a proceeding is not only conducted under Bermuda's general insolvency law, the Bermuda Companies Act, but also pursuant to the Companies (Winding-Up) Rules 1982 and Bermuda Common Law Principles, which are similar to the English Companies Act 1948, related statutory rules, and English common law. *See id.* Accordingly, the Bermuda Proceeding is being conducted under a law related to insolvency or the adjustment of debts.

### 6.   Under the Bermuda Proceeding, the Debtor's Assets and Affairs Are To Be Subject to the Control or Supervision of a Foreign Court.

48.     ***Sixth***, the Debtor's assets and affairs are to be subject to the control of the Bermuda Court during the Bermuda Proceeding. Taylor Decl. ¶ 46. As noted in a leading treatise,

> the requirement that the debtor's assets be subject to the control and supervision of a foreign court does not require that the foreign proceedings play out entirely in a judicial context like cases under the Bankruptcy Code.

> The ability of a party to ask for court assistance concerning the proceeding is sufficient to satisfy this element.

8 Collier on Bankruptcy ¶ 1501.03 (16th ed. 2018); *see also In re ENNIA Caribe Holding N.V.*, 594 B.R. at 640 (finding a proceeding subject to supervision by a foreign court where the court's approval was required to initiate or terminate the proceeding, modify certain contracts to which the debtor was party and compensate estate professionals). Here, the Bermuda Court will play a supervisory role in the Bermuda Proceeding. Specifically, as noted above, the JPLs' powers are subject to the control and supervision of the Bermuda Court. *See* Taylor Decl. ¶ 32. Under the JPL Appointment Order, the JPLs are also to provide a written report to the Bermuda Court from time to time and as the JPLs consider appropriate, or as the Bermuda Court may otherwise request. *See* JPL Appointment Order ¶ 1(k). The Debtor's assets and affairs and the JPLs are therefore subject to the control or supervision of a foreign court under the Bermuda Proceeding.

### 7.    The Foreign Proceedings Are for the Purpose of Reorganization or Liquidation of the Debtor.

49.    ***Finally***, the purpose of the Bermuda Proceeding is the Debtor's restructuring or liquidation, with an orderly distribution of the Debtor's assets first to creditors and then to members. Taylor Decl. ¶ 47. The JPLs are administering the Bermuda Proceeding together with the Debtor for the purpose of providing a stable platform to carry out the foregoing. *Id.*; Imison Decl. ¶ 13.

50.    For all the above reasons, the Bermuda Proceeding is a proceeding for the purposes of reorganization or liquidation.

### B.    The Bermuda Proceeding is a "Foreign Main Proceeding."

51.    The Bermuda Proceeding is a "foreign main proceeding" as defined by Bankruptcy Code section 1502(4): "a foreign proceeding pending in the country where the debtor has the center of its main interests[.]" 11 U.S.C. § 1502(4); *see also id.* § 1517(b)(1) (providing that an order of

recognition as a foreign main proceeding will be entered if the foreign proceeding "is pending in the country where the debtor has the center of its main interests"); *Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.)*, 714 F.3d 127 (2d Cir. 2013) (affirming recognition of foreign main proceeding); *In re Ocean Rig UDW Inc.*, 570 B.R. at 705 (recognizing foreign main proceeding); *In re Suntech PowerHoldings Co.*, 520 B.R. 399, 416–17 (Bankr. S.D.N.Y. 2014) (same).

52.    "In the absence of evidence to the contrary, the debtor's registered office . . . is presumed to be the center . . . of main interests." 11 U.S.C. § 1516(c); *see also In re Gerova Fin. Grp., Ltd.*, 482 B.R. 86, 91 (Bankr. S.D.N.Y. 2012); *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. 122, 130 (Bankr. S.D.N.Y. 2007), *aff'd*, 389 B.R. 325 (S.D.N.Y. 2008).

53.    Pursuant to Bankruptcy Code section 1516(c), the center of main interests ("**COMI**") presumption may be rebutted. The legislative history makes clear that "[t]he ultimate burden as to each element [of recognition] is on the foreign representative, although the court is entitled to shift the burden to the extent indicated in section 1516." H.R. Rep. 109–31, pt. 1, 109th Cong. 1st Sess. at 112–113 (2005). Courts have identified various factors that are relevant in identifying a debtor's COMI, none of which on their own is determinative, including: (a) the location of a debtor's headquarters; (b) the location of those persons or entities that actually manage a debtor; and (c) the location of a debtor's primary assets. *See In re SphinX, Ltd.*, 351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006), *aff'd sub nom.*, *Krys v. Official Comm. of Unsecured Creditors of Refco Inc. (In re SphinX Ltd.)*, 371 B.R. 10 (S.D.N.Y. 2007). In *In re SphinX*, this Court explained that the factors should not be applied "mechanically" and "[i]nstead, they should be

viewed in light of chapter 15's emphasis on protecting the reasonable interests of parties in interest

pursuant to fair procedures and the maximization of the debtor's value." *Id.*

54.     When determining the "location of those who actually manage the debtor," courts

consider more than the location of the board of directors of the debtor. *See In re Serviços de

Petróleo Constellation S.A.*, 600 B.R. 237, 273 (Bankr. S.D.N.Y. 2019) (citation omitted) (finding

that the analysis of the location of management should be "flexible" and reflect the realities of a

particular business). Notably, courts consider the location where the activities of liquidators and

provisional liquidators take place in their COMI analyses. *See, e.g.*, *In re Ocean Rig*, 570 B.R. at

706 (finding debtors' COMI in the Cayman Islands because it was "the site where their business

[had been] run" by joint provisional liquidators pursuant to a protocol with the directors); *In re

Fairfield Sentry Ltd.*, No. 10 Civ. 7311 (GBD), 2011 WL 4357421, at *5 (S.D.N.Y. Sept. 16,

2011), *aff'd*, 714 F.3d 127 (2d Cir. 2013) (finding COMI in the British Virgin Islands where British

Virgin Islands liquidators had been "directing and coordinating" the debtor's affairs since their

appointment); *In re Betcorp*, 400 B.R. at 292 (finding COMI in Australia where "[t]he location of

those that manage Betcorp—the liquidators" were located); *In re Suntech Power*, 520 B.R. at 418

(Bankr. S.D.N.Y. 2014) (finding COMI in the Cayman Islands where joint provisional liquidators

had "centralized the administration of the Debtor's affairs and its restructuring"). Indeed, courts

have held that "the commencement of a provisional liquidation may have a profound effect on the

business of the debtor." *Id.* at 417. This is because provisional liquidation, among other things,

"triggers a restructuring process on which the survival of the debtor's traditional business may

depend." *Id.*

55.    When analyzing the factors for determining a debtor's COMI, the Second Circuit has held that COMI should be determined based on the debtor's activities "at or around the time the Chapter 15 petition is filed." *In re Fairfield Sentry*, 714 F.3d at 137.

56.    **Registered Office**. Here, as set forth in the Imison Declaration, the Debtor has its registered office in Bermuda, creating a presumption that Bermuda is the Debtor's COMI. Imison Decl. ¶ 23.

57.    **Headquarters**. The physical location of the Debtor's headquarters is also in Bermuda. Imison Decl. ¶ 24(a).

58.    **Location of Those Who Manage the Debtor**. Most of the Debtor's central administration, management, and control takes place in Bermuda, and the management team is primarily in Bermuda. Imison Decl. ¶ 24(b). Further, while the Debtor's board meetings are typically held telephonically, in-person board meetings are held in Bermuda. *Id.*

59.    Since their appointment, the JPLs, one of whom resides in Bermuda, have monitored the Debtor's affairs, pursuant to the JPL Appointment Order. In addition, the powers of the order include, but are not limited to, evaluating and providing critical input on the proposed Restructuring and supporting filings and applications to the Bermuda Court. *See* JPL Appointment Order ¶ 1; Taylor Decl. ¶ 32; Imison Decl. ¶ 24(b). As a result, the JPLs have "centralized the administration of the [Debtor's] affairs and [its] restructuring" in Bermuda. *See In re Suntech*, 520 B.R. at 418. Given the nature of the Debtor's business, such a role was to be expected by the Debtor's creditors and other parties in interest.

60.    **Location of the Debtor's Primary Assets.** Other than the interests (including any reversionary interests) held in collateral accounts in the United States, the Debtor's primary unrestricted assets include cash amounts held in bank accounts with The Bank of N.T. Butterfield

& Son Limited in Bermuda. Imison Decl. ¶ 24(c). As noted in the Taylor Declaration, the situs of

shares in a Bermuda company is at the registered office of the company at which its register of

members is kept. The situs of shares in a Bermuda company is therefore Bermuda. Taylor Decl. ¶

49.

61.     Accordingly, because the Debtor's COMI is located in Bermuda, the Bermuda

Proceeding is a foreign main proceeding, and, thus, the first element of Bankruptcy Code section

1517(a) is satisfied.

**C.     In the Alternative, the Bermuda Proceeding Is a Foreign Nonmain Proceeding.**

62.     In the alternative, if this Court concludes that the Bermuda Proceeding is not a

"foreign main proceeding," the Bermuda Proceeding should be recognized as a "foreign nonmain

proceeding" under Bankruptcy Code section 1502(5).

63.     A "foreign nonmain proceeding," is defined as "a foreign proceeding, other than a

foreign main proceeding, pending in a country where the debtor has an establishment." *See* 11

U.S.C. § 1502(5); *see id*. § 1517(b)(2) (providing that an order of recognition as a "foreign

nonmain proceeding" shall be entered "if the debtor has an establishment within the meaning of

section 1502 in the foreign country where the proceeding is pending"). An establishment is "any

place of operations where the debtor carries out a nontransitory economic activity." 11 U.S.C.

§ 1502(2); *In re Serviços de Petróleo Constellation S.A.*, 600 B.R. at 277. "Nontransitory

economic activity" is not defined in the Bankruptcy Code, but has been referred to as "a local place

of business." *See In re Creative Fin. Ltd.*, 543 B.R. 498, 520 (Bankr. S.D.N.Y 2016) (holding that

in order to have an establishment in a country a debtor must "conduct business in that country");

*see also In re Bear Stearns*, 374 B.R. at 131 (holding that the requirements of a "place of

operations" from which "economic activity" is conducted require a seat for local business activity

that has a local effect on the markets). As with determining a debtor's COMI, the determination of

whether a debtor has an establishment in a country is made as of the time of the filing of the chapter 15 petition. *See Lavie v. Ran*, 406 B.R. 277, 284-85 (S.D. Tex. 2009) *aff'd sub nom. In re Ran*, 607 F.3d 1017 (5th Cir. 2010); *Beveridge v. Vidunas (In re O'Reilly)*, 598 B.R. 784, 803 (Bankr. W.D. Pa. 2019).

64.     At least one court has also found that the presence of liquidators is relevant to the determination of whether a debtor has an establishment in that location. *See, e.g.*, *In re Millennium Glob. Emerging Credit Master Fund Ltd. (Millennium Glob. I)*, 458 B.R. 63, 86 (Bankr. S.D.N.Y. 2011), *aff'd*, 474 B.R. 88 (*Millennium Glob. II*) (S.D.N.Y. 2012) (finding that Bermuda proceedings should be recognized as foreign main proceedings or, in the alternative, foreign nonmain proceedings, after considering, among other factors, the fact that the liquidators are subject to the control of the court in Bermuda); *Millennium Glob. II*, 474 B.R. at 94 (affirming *Millennium Glob. I* and noting, among other things, that "Bermuda is where the liquidation proceedings are taking place, under the supervision of the Bermuda court").

65.     In this case, the Debtor has demonstrated, at the least, an establishment in Bermuda. The JPLs have centralized the Debtor's restructuring activities in Bermuda. Specifically, as noted above, they have been monitoring the Debtor's affairs and evaluating and providing critical input on the Debtor's proposed liquidation, and have supported filings and applications to the Bermuda Court. In addition, as noted above, the Debtor has carried on its business in Bermuda, where most management members reside, since it was incorporated and continues to exist in accordance with the laws of Bermuda. Imison Decl. ¶ 24(b). Further, the Debtor's primary unrestricted assets are in Bermuda. *Id.* ¶ 24(c). The Debtor also has a presence in the Bermuda marketplace as a Bermuda-regulated entity, including the Debtor's registration with the Bermuda Monetary Authority. *Id.* ¶

24(d). These facts are sufficient, at a minimum, to support the finding of an "establishment" in

Bermuda.

### III.    The Chapter 15 Case Has Been Commenced by Duly Authorized Foreign Representatives.

66.    The second requirement for recognition of a foreign proceeding under Bankruptcy

Code section 1517(a) is that the foreign representative applying for recognition be a "person or

body." *See* 11 U.S.C. § 1517(a)(2). Bankruptcy Code section 1516(a) provides that a bankruptcy

court may presume that the person petitioning for chapter 15 recognition is a foreign representative

if the decision or certificate from the foreign court so indicates. *See id.* § 1516(a) ("If the decision

or certificate [commencing or affirming the existence of a foreign proceeding and appointing the

foreign representative] indicates that the foreign proceeding is a foreign proceeding and that the

person or body is a foreign representative, the court is entitled to so presume."). The term "foreign

representative" is defined in Bankruptcy Code section 101(24) as:

> a person or body, including a person or body appointed on an interim basis,
> authorized in a foreign proceeding to administer the reorganization or the
> liquidation of the debtor's assets or affairs or to act as a representative of
> such foreign proceeding.

11 U.S.C. § 101(24).

67.    Here, the JPL Appointment Order, which is a decision from the foreign court,

provides that the JPLs are the duly authorized foreign representatives of the Debtor, who may,

among other things, file for chapter 15 recognition. *See* JPL Appointment Order ¶ 1(h). Therefore,

the Court may presume that the JPLs are duly authorized foreign representatives. In addition, as

"individuals," the proposed Foreign Representatives are each a "person" under section 101(41) of

the Bankruptcy Code. *See* 11 U.S.C. § 101(41).

68.    Moreover, courts in this district have previously acknowledged that a liquidator, or

provisional liquidator, appointed in Bermuda constitutes a "foreign representative" for chapter 15

purposes. *See, e.g.*, *In re Digicel Group One Ltd.*, Case No. 20-11207 (SCC) (Bankr. S.D.N.Y. June 17, 2020) (joint provisional liquidators appointed pursuant to Bermuda law were authorized as duly appointed foreign representatives within the meaning of section 101(24)); *In re Gerova Fin. Grp. Ltd.*, Case No. 12-13641 (ALG) (Bankr. S.D.N.Y. Oct. 11, 2012) (same); *In re Inverness Distrib. Ltd. f/k/a Morgan Creek Int'l Ltd.*, Case No. 11-12106 (SCC) (Bankr. S.D.N.Y. June 1, 2011) (same); *In re Lehman Re Ltd.*, Case No. 09-14884 (JMP) (Bankr. S.D.N.Y. Sept. 24, 2009) (same); *In re Bluepoint Re Ltd.*, Case No. 08-13169 (REG) (Bankr. S.D.N.Y Sept. 29, 2008) (same).

69.     Thus, the JPLs have met the requirements of Bankruptcy Code section 101(24) and are the Debtor's "foreign representatives" as defined therein. *See* 11 U.S.C. § 1516(a) ("If the decision [commencing the foreign proceeding] . . . indicates . . . that the person or body is a foreign representative, the court is entitled to so presume."); *In re SphinX, Ltd.*, 351 B.R. at 116-17 (holding that section 101(24) of the Bankruptcy Code was satisfied where foreign representatives submitted a "copy of the Cayman Court's order appointing them to administer the [d]ebtors' winding up under [Cayman law] and authorizing their commencement of these chapter 15 cases").

## IV.    The Verified Petition Meets the Requirements of Bankruptcy Code Section 1515.

70.     The Chapter 15 Case was duly and properly commenced as required by Bankruptcy Code section 1504 by filing petitions for recognition pursuant to Bankruptcy Code section 1515(a). Pursuant to Bankruptcy Code section 1515(b), a petition for recognition must be accompanied by one of the following:

   (i)     a certified copy of the decision commencing such foreign proceeding and appointing the foreign representative;

   (ii)    a certificate from the foreign court affirming the existence of such foreign proceeding and of the appointment of the foreign representative; or

24

>        (iii)    in the absence of evidence referred to in paragraphs (1) and (2), any other
>                 evidence acceptable to the court of the existence of such foreign proceeding
>                 and of the appointment of the foreign representative.

11 U.S.C. § 1515(b).

71.    In satisfaction of section 1515(b), a certified copy of the JPL Appointment Order, affirming the existence of the Bermuda Proceeding is attached to the official form chapter 15 petition as Exhibit B. As discussed above, the JPL Appointment Order constitutes a decision of the Bermuda Court commencing the Bermuda Proceeding and appointing the JPLs as the foreign representatives. JPL Appointment Order ¶ 1(h).[4]

72.    The official form chapter 15 petition was accompanied by all fees, documents, and information required by the Bankruptcy Code and the Bankruptcy Rules, including (a) a corporate ownership statement containing the information required by Bankruptcy Rule 7007.1; (b) a list containing (i) the names and addresses of all persons or bodies authorized to administer foreign proceedings of the Debtor, (ii) all parties to litigation pending in the United States in which the Debtor is a party at the time of the filing of this Chapter 15 Case, and (iii) all entities against whom provisional relief is being sought under Bankruptcy Code section 1519; (c) a statement identifying all foreign proceedings with respect to the Debtor that are known to the Foreign Representatives; and (d) a certified copy of the JPL Appointment Order. Therefore, the Verified Petition meets the requirements of Bankruptcy Code section 1515 in satisfaction of the third requirement under Bankruptcy Code section 1517(a). *See In re Bear Stearns*, 374 B.R. at 127 ("A case under chapter 15 is commenced by a foreign representative filing a petition for recognition of a foreign proceeding under section 1515 of the Bankruptcy Code.").

---

[4]    The Debtor reserves the right to supplement these materials in advance of or at the Recognition Hearing on the Verified Petition.

**V.**      **The Relief Requested Is Consistent with U.S. Public Policy and Policy Behind the Bankruptcy Code.**

73.      The purpose of chapter 15 is set forth in Bankruptcy Code section 1501 and includes:

> (i)      cooperation between (A) courts of the United States, the United States Trustee, trustees, examiners, debtors, and debtors in possession; and (B) the courts and other competent authorities of foreign countries involved in cross-border insolvency cases;

> (ii)      greater legal certainty for trade and investment;

> (iii)      fair and efficient administration of cross-border insolvencies that protects the interests of all creditors and other interested entities, including the debtor;

> (iv)      protection and maximization of the value of the debtor's assets; and

> (v)      facilitation of the rescue of financially troubled businesses, thereby protecting investment and preserving employment.

11 U.S.C. § 1501. Recognition of the Bermuda Proceeding as a foreign main proceeding comports with all of these objectives.

74.      Bankruptcy Code section 1506 provides that nothing in chapter 15 shall prevent the Court from refusing to take an action otherwise required therein if such action would be manifestly contrary to the public policy of the United States. This public policy exception, however, is narrowly construed. *See, e.g.*, *In re Sino-Forest Corp.*, 501 B.R. 655, 665 (Bankr. S.D.N.Y. 2013); *In re Metcalfe & Mansfield Alt. Invs.*, 421 B.R. 685, 697 (Bankr. S.D.N.Y. 2010); *Ad Hoc Grp. of Vitro Noteholders v. Vitro S.A.B. de CV (In re Vitro S.A.B. de CV)*, 701 F.3d 1036, 1069 (5th Cir. 2012). Moreover, the public policy exception must be viewed in light of one of the fundamental goals of the Bankruptcy Code—the centralization of disputes involving the debtor. *See, e.g.*, *Shugrue v. Air Line Pilots, Ass'n, Int'l (In re Ionosphere Clubs, Inc.)*, 922 F.2d 984, 989 (2d Cir. 1990) ("The Bankruptcy Code 'provide[s] for centralized jurisdiction and administration of the

debtor, its estate and its reorganization in the Bankruptcy Court . . . .'" (alteration in original) (citation omitted)).

75.    Recognition of the Bermuda Proceeding as a foreign main proceeding will enable the JPLs and the Debtor to fully implement a restructuring or a liquidation. By recognizing the Bermuda Proceeding and granting the other relief requested herein, including recognition of the Foreign Representatives as such, the process of resolving any residual claims against the Debtor would be centralized in Bermuda, which is a fundamental goal of the Bankruptcy Code. *See, e.g.*, *In re Ionosphere Clubs, Inc.*, 922 F.2d at 989; *Cornfeld v. Invs. Overseas Servs., Ltd.*, 471 F. Supp. 1255, 1259 (S.D.N.Y. 1979) (noting that "the firm policy of American courts is the staying of actions against a corporation which is the subject of a bankruptcy proceeding in another jurisdiction"), *aff'd*, 614 F.2d 1286 (2d Cir. 1979). As such, recognition of the Bermuda Proceeding would promote the policies underlying the Bankruptcy Code and is not manifestly contrary to U.S. public policy.

76.    For all of the reasons set forth above, the Foreign Representatives submit that all of the requirements set forth in section 1517(a) have been satisfied and, thus, the entry of the Proposed Order by the Court recognizing the Bermuda Proceeding as a "foreign main proceeding," or in the alternative, as a "foreign nonmain proceeding," is proper.

**NOTICE**

77.    Notice of this Motion will be provided to: (a) the Debtor, (b) the Office of the United States Trustee for the Southern District of New York, (c) parties entitled to notice under Bankruptcy Rule 2002(q)(1), (d) all other parties that request notice in these cases pursuant to Bankruptcy Rule 2002 prior to the date of such service, (e) all parties the Foreign Representatives believe to be affected by the Relief Requested pursuant to Local Bankruptcy Rule 9013-1, and (f) all other parties that this Court may direct, as set forth in the Foreign Representatives' separate

contemporaneously filed motion to establish notice procedures in this Chapter 15 Case. The Foreign Representatives submit that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

## NO PRIOR REQUEST

78.     No previous request for the relief sought herein has been made to the Court or any other court.

## CONCLUSION

WHEREFORE, the Foreign Representatives respectfully submits that the Verified Petition satisfies the requirements for the recognition of the Bermuda Proceeding, and respectfully request that this Court enter the Proposed Order (a) recognizing the Bermuda Proceeding as a "foreign main proceeding" pursuant to chapter 15 of the Bankruptcy Code; (b) recognizing each of the Foreign Representatives as a "foreign representative," as defined in Bankruptcy Code section 101(24) in respect of the Bermuda Proceeding; and (c) granting such other relief as may be just and proper.

Dated: October 26, 2025
        New York, New York

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP

*/s/ Robert D. Drain*
Robert D. Drain
One Manhattan West
New York, New York 10001
Telephone: (212) 735-3000
Fax: (212) 735-2000

– and –

Justin M. Winerman (*pro hac vice* admission pending)
320 S. Canal Street
Chicago, Illinois 60606-5707
Telephone: (312) 407-0700

Fax: (312) 407-0411

– and –

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM (UK) LLP

Peter Newman
Nicole Stephansen
22 Bishopsgate
London EC2N 4BQ
Telephone: +44 20 7519 7000
Fax: +44 20 7519 7070

*Counsel to the Debtor*

## VERIFICATION OF PETITION

I, Daniel Imison, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury under the laws of the United States of America as follows:

I am a Managing Director at AlixPartners UK LLP and one of the duly appointed foreign representatives of the Debtor. As such, I have full authority to verify the foregoing Verified Petition on behalf of the Debtor.

I have read the foregoing Verified Petition, and I am informed and believe that the factual allegations contained therein are true and accurate to the best of my knowledge, information, and belief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: October 26, 2025
          London, United Kingdom

                                        _/s/_____ _Daniel Imison_____
                                        By:   Daniel Imison
                                        Title: Managing Director
                                                AlixPartners UK LLP