Peter R. Chaffetz
Alan J. Lipkin
Sarah M. Schrag
Allison Scott
CHAFFETZ LINDSEY LLP
1700 Broadway
New York, New York 10019
Telephone: (212) 257-6960
Facsimile: (212) 257-6950

*Attorneys for Foreign Representative*
*and Chapter 15 Debtors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In re*<br><br>FLEMING INTERNATIONAL REINSURANCE LTD.,<br><br>Debtor in Foreign Proceeding.[1] | Chapter 15<br><br>Case No. 25-12353 (JPM) |

**NOTICE OF FOREIGN REPRESENTATIVES' MOTION FOR AN ORDER: (I) AUTHORIZING THE FOREIGN REPRESENTATIVES TO ENTER INTO NATIONAL TRANSPORTATION ASSOCIATES INC. SETTLEMENT AGREEMENT PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE; AND (II) ENTRUSTING SETTLEMENT FUNDS TO THE FOREIGN REPRESENTATIVES FOR DISTRIBUTION IN THE BERMUDA PROCEEDING**

**PLEASE TAKE NOTICE** that on June 26, 2026, Simon Appell and Daniel Imison of AlixPartners UK LLP and Mathew Clingerman of Kroll Bermuda Limited, in their capacities as the joint provisional liquidators and as the authorized foreign representatives (in such capacities, the "**JPLs**" or the "**Foreign Representatives**") of the above-captioned foreign debtor (the "**Debtor**"), filed the *Foreign Representatives' Motion for an Order: (1) Authorizing the Foreign Representatives to Enter into National Transportation Associates Inc. Settlement Agreement Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure; and (II) Entrusting Settlement Funds to the Foreign Representatives for Distribution in the Bermuda Proceeding* (the "**NTA Settlement Motion**") with the United States Bankruptcy Court for the Southern District of New York (the "**Court**").

**PLEASE TAKE FURTHER NOTICE** that any objection to the NTA Settlement

[1] The Debtor is a Bermuda Debtor registered with the Registrar of Companies in Bermuda. The Debtor's registration number is 41041. The Debtor has its registered office located at Clarendon House, 2 Church Street, Hamilton, HM11, Bermuda.

Motion must be made in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules, in a writing that sets forth the basis for such objection with specificity. Any such objection must be filed electronically with the Court on the Court's electronic case filing system in accordance with and except as provided in General Order M-399 (a copy of which may be viewed on the Court's website at www.nysb.uscourts.gov) and the Court's *Procedures for the Filing, Signing and Verification of Documents by Electronic Means*, and served upon (i) the Debtor's counsel, Chaffetz Lindsey LLP, 1700 Broadway, 33rd Floor, New York, NY 10019 (Attn: Peter R. Chaffetz (p.chaffetz@chaffetzlindsey.com) and Alan J. Lipkin (a.lipkin@chaffetzlindsey.com)); (ii) the Office of the United States Trustee, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, New York 10014 (Attn: Mark Bruh (mark.bruh@usdoj.gov) and Annie Wells (annie.wells@usdoj.gov)), and (iii) the Notice Parties, so as to be received **by 4:00 P.M. (prevailing Eastern Time) on July 17, 2026**, with a courtesy copy delivered to the Chambers of the Honorable John P. Mastando III, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004-1408.

**PLEASE TAKE FURTHER NOTICE** that if no objection is timely filed and served as provided above, the Court may grant the relief requested in the NTA Settlement Motion without a hearing or further notice.

**PLEASE TAKE FURTHER NOTICE** that, if any objections are timely filed and served, a hearing on the NTA Settlement Motion will be held at the earliest convenience of the Court, before the Honorable John P. Mastando III, United States Bankruptcy Judge of the United States Bankruptcy Court for the Southern District of New York. The hearing will be held in the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004-1408. Only timely filed and received written objections will be considered by the Court at the hearing.

*[Remainder of page intentionally left blank]*

Date: June 26, 2026
New York, NY

Respectfully submitted,

*/s/ Sarah M. Schrag*

**CHAFFETZ LINDSEY LLP**
1700 Broadway, 33rd Floor
New York, NY 10019
Peter R. Chaffetz
Alan J. Lipkin
Sarah M. Schrag
Allison Scott
p.chaffetz@chaffetzlindsey.com
a.lipkin@chaffetzlindsey.com
a.scott@chaffetzlindsey.com

*Counsel for the Foreign Representative and Chapter 15 Debtor*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In re*<br><br>FLEMING INTERNATIONAL REINSURANCE LTD.,<br><br>Debtor in Foreign Proceeding.[2] | Chapter 15<br><br>Case No. 25-12353 (JPM) |

**FOREIGN REPRESENTATIVES' MOTION FOR AN ORDER: (I) AUTHORIZING THE FOREIGN REPRESENTATIVES TO ENTER INTO NATIONAL TRANSPORTATION ASSOCIATES INC. SETTLEMENT AGREEMENT PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE; AND (II) ENTRUSTING SETTLEMENT FUNDS TO THE FOREIGN REPRESENTATIVES FOR DISTRIBUTION IN THE BERMUDA PROCEEDING**

Simon Appell and Daniel Imison of AlixPartners UK LLP and Mathew Clingerman of Kroll Bermuda Limited, in their capacities as the joint provisional liquidators and authorized foreign representatives (in such capacities, the "**JPLs**" or the "**Foreign Representatives**") of the above-captioned foreign debtor (the "**Debtor**"), by and through their undersigned counsel, hereby submit this motion (the "**NTA Settlement Motion**") pursuant to sections 105(a) and 1521 of title 11 of the United States Code (the "**Bankruptcy Code**"), and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), requesting the entry of an order (the "**Proposed Order**"), substantially in the form attached hereto as **Exhibit A**: (i) authorizing and approving the settlement agreement attached hereto as **Exhibit B** (the "**Settlement Agreement**") with National Transportation Associates Inc. ("**NTA**"); and (ii) entrusting the proceeds of the Settlement (the "**Settlement Funds**") to the JPLs for transfer to the Debtor's bank account in Bermuda (the

[2] The Debtor is a Bermuda Debtor registered with the Registrar of Companies in Bermuda. The Debtor's registration number is 41041. The Debtor has its registered office located at Clarendon House, 2 Church Street, Hamilton, HM11, Bermuda.

"**Bermuda Account**") and use by the Debtor to fund operations and for payment of administrative claims and/or distribution in the Debtor's provisional liquidation proceeding (the "**Winding-Up Proceeding**") (and together with the Debtor's contemplated Scheme of Arrangement (the "**Scheme**"), the "**Bermuda Proceeding**") pending in the Supreme Court of Bermuda (the "**Bermuda Court**"). In support of this NTA Settlement Motion, the Foreign Representatives rely on the Declaration of Mathew Clingerman (the "**Clingerman Decl.**"), which is being filed contemporaneously herewith. In further support of this NTA Settlement Motion, the Foreign Representatives respectfully state as follows:

## JURISDICTION AND VENUE

1. The United States Bankruptcy Court for the Southern District of New York (this "**Court**") has jurisdiction over this NTA Settlement Motion pursuant to 28 U.S.C. §§ 157(a) and 1334 and the *Amended Standing Order of Reference M-431*, dated January 31, 2012 (Preska, C.J.). This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. Venue of this matter in the Court is proper pursuant to 28 U.S.C. § 1410.

3. Pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the Court ("**Local Rules**"), the Foreign Representatives confirm their consent to the Court entering a final order in connection with this NTA Settlement Motion to the extent it is later determined the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

4. The bases for the relief requested herein are Bankruptcy Code sections 105(a) and 1521(b) and Bankruptcy Rule 9019.

## REQUESTED RELIEF

5. By this NTA Settlement Motion, the JPLs seek the entry of the Proposed Order: (a) authorizing and approving the Settlement Agreement with NTA; and (b) entrusting the

Settlement Funds to the JPLs for transfer to the Debtor's Bermuda Account and use by the Debtor to fund operations and payment of administrative claims and/or distribution in the Debtor's Bermuda Proceeding in accordance with the JPL Appointment Order (as defined below) and Bermuda law.

## BACKGROUND[3]

### The NTA Action and the Bermuda Proceeding

6. On May 3, 2024, the Debtor's predecessor-in-interest JRG Reinsurance Company Ltd. ("**JRG Re**") filed an action against NTA in the United States District Court for the Northern District of Texas, Fort Worth Division, captioned *JRG Reinsurance Company, Ltd. v. National Transportation Associates, Inc.*, Case No. 4:24-cv-00394 (the "**Action**"). As set forth in the complaint (the "**Complaint**"), it is alleged that NTA had breached a series of Quota Share Reinsurance Agreements ("**QSRAs**") and related General Agency Agreements ("**GAAs**"). The Complaint sought nearly $3.5 million in unremitted commission adjustments related to the QSRAs and over $500,000 for money overpaid by JRG Re into a loss fund controlled by NTA.

7. On July 8, 2024, NTA filed *Defendant's Answer, Affirmative Defenses, and Counterclaims to Plaintiff JRG Reinsurance Company, Ltd.'s Original Complaint*, Case No. 4:24-cv-00394, Docket No. 15.

[3] Additional background regarding this Chapter 15 Case can be found in the following documents: (i) the *Verified Petition for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representatives, and (III) Certain Related Relief* [Docket No. 2] ("**Verified Petition**"); (ii) the *Declaration of Eric Haller in Support of the (I) Verified Petition, (II) Motion for Entry of Orders Granting (A) Emergency Ex Parte Relief and (B) Provisional Relief, Pursuant to Bankruptcy Code Section 1519, and (III) the Scheduling Motion* [Docket No. 4] ("**Haller Decl.**"); (iii) the *Declaration of Kevin Taylor in Support of the Verified Petition for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representatives, and (III) Certain Related Relief* [Docket No. 5] ("**Taylor Decl.**"); and (iv) the *Declaration of Daniel Imison in Support of the Verified Petition for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representatives, and (III) Certain Related Relief* [Docket No. 6]("**Imison Decl.**").

8. On October 10, 2025, NTA filed *Defendant National Transportation Associate's Amended Answer, Affirmative Defenses, and Counterclaims to Plaintiff JRG Reinsurance Company, Ltd.'s Original Complaint*, Case No. 4:24-cv-00394, Docket No. 96 (the "**Amended Answer**"). As set forth in the Amended Answer, NTA brought counterclaims for breach of contract totaling over $23 million based on JRG Re's alleged failure to accept all ceded liability from policies issued by NTA and for contribution to a settlement between NTA and a related party, United Specialty Insurance Company ("**USIC**").[4] Specifically, the complex counterclaims concerned losses related to a $67 million dollar judgment against one of USIC's insured, Rai Trucking. Further, NTA raised multiple colorable affirmative defenses that could have limited or eliminated JRG Re's recovery including that JRG Re breached the QSRAs and GAAs first by refusing to accept ceded liability and also that the commission provisions in the QSRAs upon which JRG Re relies for its affirmative claims are illegal, based on interpretations of the Texas and California Insurance Codes.

9. On October 20, 2025, the Debtor commenced the Bermuda Proceeding by filing a winding-up petition with the Bermuda Court seeking, among other things, appointment of joint provisional liquidators.

10. On October 21, 2025, the Bermuda Court issued the *Order in the Matter of Fleming International Reinsurance Ltd. and in the Matter of the Companies Act 1981 and in the Matter of the Insurance Act 1978* ("**JPL Appointment Order**"), appointing Daniel Imison, Simon Appell, and Mat Clingerman as the Debtor's joint provisional liquidators with "light-

[4] Although the Debtor's pro rata participation in the relevant reinsurance agreement was only 13.33%, NTA has asserted claims against each participating reinsurer that its conduct resulted in NTA suffering in excess of $23 million in damages.

touch" powers for the purposes of facilitating the Debtor's restructuring.[5] Thus, the Debtor remained in control of its management subject to the JPLs' oversight. *See* Clingerman Decl. at ¶ 3. Among other powers provided by the JPL Appointment Order is the JPLs' power to "to take such steps as the JPLs deem appropriate with respect to any settlements, compromises, or arrangements" and "sign off on or execute agreements . . . on behalf of [the Debtor]." JPL Appointment Order ¶¶ 1(f) and -(g). Per the Bermuda Companies Act, which governs the JPLs' powers and duties, the JPLs must "be independent from the management of a company and its creditors" and "act in an even-handed fashion between creditors or members or groups of creditors or members."

11. On October 24, 2025, the Debtor filed *Plaintiff JRG Reinsurance Company Ltd.'s Answer to Defendant's Amended Counterclaims*, Case No. 4:24-cv-00394, Docket No. 105.

12. On October 26, 2025, the Foreign Representatives filed with this Court the Verified Petition for relief for the Debtor under chapter 15 of the Bankruptcy Code, thereby commencing this chapter 15 case (the "**Chapter 15 Case**").

13. On November 20, 2025, the Court entered the *Order Granting (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representatives, and (III) Certain Related Relief* [Docket No. 39] (the "**Recognition Order**") that, among other things, made all provisions of Bankruptcy Code section 1520 applicable in this case.

14. On December 1, 2025, the Bankruptcy Court entered the *Stipulation and Agreed Order Pursuant to Bankruptcy Code Sections 362, 1519, and 1520 Granting Limited Relief from the Stay* [Docket No. 41], modifying the stay imposed in the Chapter 15 Case to permit: (a) the

[5] The JPL Appointment Order is attached as Exhibit B to the Chapter 15 Petition for Recognition of a Foreign Proceeding [Docket No. 1].

Foreign Representatives and the Debtor to prosecute the Debtor's claims against NTA; and (b) NTA to prosecute its counterclaims against the Debtor.

15. In recent months, the JPLs, in consultation with the Debtor's operating personnel and outside counsel, assessed the strength of JRG Re's case in light of the Chapter 15 Case and in exercise of its sound business judgment determined that the risk associated with NTA's counterclaims and the potential costs of litigating a complex reinsurance dispute are too great, such that settlement is in the best interest of the Debtor's estate. *See* Clingerman Decl. at ¶ 9. In mid-April 2026, the Debtor and NTA entered into settlement discussions. *Id.*

**The Settlement**

16. After productive settlement discussions, on May 29, 2026, NTA and the Debtor entered into the Settlement Agreement attached hereto as **Exhibit B**, whereby NTA agreed to pay the Debtor $250,000 (the "**Settlement Payment**") in exchange for a mutual release of liabilities. *See* Clingerman Decl. at ¶ 10. The key provisions of the Settlement Agreement include the following:[6]

***a.*** NTA will pay the Debtor the Settlement Payment via wire transfer within 20 days of receiving notice from the Debtor that both the Bermuda Court and this Court have authorized the Settlement Agreement;

***b.*** The Debtor, on behalf of its predecessors and its respective affiliates irrevocably releases NTA from any and all liability, whether known or unknown, related to the Commission Provisions, the Dispute, and/or the Litigation (all as defined in the Settlement Agreement);

***c.*** NTA irrevocably releases and discharges the Debtor from any and all liabilities, whether known or unknown, related to the Commission Provisions, the Dispute, and/or the Litigation (all as defined in the Settlement Agreement);

[6] These terms are provided for ease of reference. To the extent that there is any conflict between the summary herein and the terms of the Settlement Agreement, the terms of the Settlement Agreement will prevail.

***d.*** The Debtor and NTA agree that authorization of the Settlement Agreement by the Bermuda Court and this Court are conditions precedent to the Settlement Agreement becoming effective;

***e.*** Within five days of the Debtor's receipt of the Settlement Payment, the Debtor and NTA will execute, and NTA will file a joint motion to dismiss the Action with prejudice and without costs to either party.

## BASES FOR RELIEF

### I. THE PROPOSED SETTLEMENT FALLS WITHIN THE RANGE OF REASONABLENESS AND SHOULD BE APPROVED

17. Bankruptcy Rule 9019 provides, in relevant part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019. "Settlements are generally favored in bankruptcy because they 'minimize costly litigation and further parties' interests in expediting the administration of the bankruptcy estate.'" *In re Allard, No. 18-14092*, 2021 WL 2546668, at *6 (Bankr. S.D.N.Y. June 21, 2021) (quoting *HSBC Bank USA v. Fane* (*In re MF Glob. Inc.*), 466 B.R. 244, 247 (Bankr. S.D.N.Y. 2012)).

18. Approval of a settlement lies within the sound discretion of the bankruptcy court. *See Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994). The court's discretion should be exercised "in light of the general public policy favoring settlements." *In re Hibbard Brown & Co.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998) (citation omitted). Settlements and compromises should be rejected only if they fall "below the lowest point in the range of reasonableness." *In re Stone Barn Manhattan LLC*, 405 B.R. 68, 75 (Bankr. S.D.N.Y. 2009).

19. Here, the settlement provides a sum certain to the Debtor and the avoidance of costly litigation expenses. *See* Clingerman Decl. at ¶ 12. The Debtor will receive the Settlement Payment and a full and irrevocable release and discharge of all liabilities by reason of any claim or matter whatsoever related to the Commission Provisions, the Dispute, and/or the Litigation (as defined in the Settlement Agreement) in exchange for a mutual release against NTA. *See*

Settlement Agreement at ¶¶ 1-3. Additionally, in light of the substantial size of the counterclaims (allegedly worth at least 13.33% of over $23 million and possibly more), the $250,000 settlement is a reasonable outcome for the Debtor. *See* Clingerman Decl. at ¶ 12.

20. Approval of a settlement involves evaluating the following interrelated factors:

> (1) the balance between the litigation's possibility of success and the settlement's future benefits;
>
> (2) the likelihood of complex and protracted litigation, with its attendant expense, inconvenience, and delay, including the difficulty in collecting on the judgment;
>
> (3) the paramount interests of the creditors, including each affected class's relative benefits and the degree to which creditors either do not object to or affirmatively support the proposed settlement;
>
> (4) whether other parties in interest support the settlement;
>
> (5) the competency and experience of counsel supporting, and the experience and knowledge of the bankruptcy court judge reviewing, the settlement;
>
> (6) the nature and breadth of releases to be obtained by officers and directors; and
>
> (7) the extent to which the settlement is the product of arm's length bargaining.

*See Motorola Inc. v. Official Committee of Unsecured Creditors* (*In re Iridium Operating LLC*), 478 F.3d 452, 455 (2d Cir. 2007) (cleaned up).

***a. Factor 1: Balance Between the Litigation's Possibility of Success and the Settlement's Future Benefits.***

21. If the Action is litigated to judgment, the potential loss could be greater than 13.33% of over $23 million in claims alleged in NTA's counterclaims because of the costs of litigation and other factors; whereas, the potential benefit to the Debtor would be at most the $4 million in claims alleged in the Complaint. *See* Clingerman Decl. at ¶ 13. Moreover, the fact that the Settlement will provide an immediate, definitive resolution, shielding the Debtor from

massive potential liability and providing an immediate cash infusion, weighs strongly in favor of settlement. *Id.* Upon receipt, the Settlement Funds will be used to fund the Debtor's current operations and pay administrative costs of and creditors in the Bermuda Proceeding. *Id.*

***b. Factor 2: Likelihood of Complex and Protracted Litigation, with Attendant Expense, Inconvenience, and Delay, Including Difficulty Collecting Judgment.***

22. The issues presented in the claims and counterclaims involve a series of complex reinsurance agreements very likely resulting in protracted and expensive litigation. *See* Clingerman Decl. at ¶ 14. The litigation has been ongoing for more than two years, and yet the parties had not even engaged in dispositive motion practice or completed discovery, including numerous depositions, in the Action prior to the Debtor reaching its settlement with NTA. *Id.* Thus, the cost and delay involved with reaching a final judgment in the Action would be substantial, and more importantly, would require the Debtor to divert substantial people and resources away from the Debtor's efforts to reach finality in the Bermuda Proceeding. *Id.*

***c. Factor 3: Paramount Interests of Creditors, Including Affected Class's Relative Benefits and Degree to Which Creditors Either do not Object to or Affirmatively Support the Proposed Settlement.***

23. The JPLs, who have a duty to the Debtor's creditors, have approved the Settlement Agreement because they believe that it is in the best interest of the Debtor and its creditors. *See* Clingerman Decl. at ¶ 15. Among other things, it is not expected that creditors will be paid in full, meaning any costs of litigation will reduce funds available for distribution to creditors. *Id.* Thus, the Settlement Agreement "serves the interest of creditors as it offers a clear and definitive resolution of pending and anticipated litigation thereby conserving estate resources." *In re Wythe Berry Fee Owner LLC*, 660 B.R. at 565; *In re ECM Straits Fund I, LP*, No. 23-12044, 2024 WL 4712995, at *7 (Bankr. S.D.N.Y. Nov. 7, 2024) ("Given the Settlement's likeliness to conserve

estate assets and maximize value for creditors, the third Iridium Factor also favors approval of the Settlement.”).

***d. Factor 4: Whether Other Parties in Interest Support Settlement.***

24. As of the date of this filing, the Debtor and the JPLs are unaware of any parties in interest who opposes the Settlement Agreement, which was filed in the Bermuda Proceeding on or about June 9, 2026 and sanctioned and approved by court order in that proceeding on June 26, 2026. *See* Clingerman Decl. at ¶ 16.

***e. Factor 5: Competency and Experience of Counsel Supporting, and Experience and Knowledge of Bankruptcy Court Judge Reviewing, the Settlement.***

25. Courts find this factor met where the counsel in support of the settlement has “years of experience in bankruptcy” and has “engaged or presided over complex litigation.” *See e.g.*, *Ehrlich v. DiStefano* (*In re DiStefano*), 654 B.R. 49, 56 (Bankr. N.D.N.Y. 2023); *In re Comair Ltd.* (*in Liquidation*), No. 21-10298 (JLG), 2025 WL 3037797, at *6 (Bankr. S.D.N.Y. Oct. 30, 2025). Here, the Debtor’s counsel in support of the settlement, Chaffetz Lindsey LLP, has both years of bankruptcy experience and has engaged in volumes of complex commercial litigation and reinsurance disputes. *See* Clingerman Decl. at ¶ 17.

***f. Factor 6: Nature and Breadth of Releases to be Obtained by Officers and Directors.***

26. The Settlement Agreement contains mutual releases and discharges for both the Debtor and NTA, and their respective past, present, and future officers and directors, related to the Commission Provisions, the Dispute, and/or the Litigation (all as defined in the Settlement Agreement). Settlement Agreement at ¶¶ 2-3. The releases and discharges include, among other things, all of NTA’s potential counterclaims against the Debtor, including at least 13.33% of over $23 million in claims related to the Rai Trucking judgment. *See id.*; Clingerman Decl. at ¶ 18.

***g. Factor 7: Extent to Which Settlement is Product Of Arm’s Length Bargaining.***

27. The Settlement Agreement is the product of genuine arm's-length negotiations. After multiple rounds of negotiations, the settlement amount has been approved by the JPLs, who have a duty to the Debtor's creditors. *See* Clingerman Decl. at ¶ 19.

28. In sum, the JPLs, acting in accordance with the JPL Appointment Order and Bermuda law, have exercised sound business judgment in approving the Settlement, which is well within the range of reasonableness. *Id.* at ¶ 20.

## II. THERE ARE SUFFICIENT SAFEGUARDS TO ENTRUST THE SETTLEMENT FUNDS TO THE FOREIGN REPRESENTATIVES

29. The JPLs intend to direct the Settlement Funds to be transferred to the Debtor's Bermuda Account for use in the Debtor's operations and payment of administrative expenses and distributions in the Bermuda Proceeding. *Id.* at ¶ 21. Section 1521(b) allows the Court to "entrust the distribution of all or part of the debtor's assets located in the United States to the foreign representative or another person . . . provided that the court is satisfied that the interests of creditors in the United States are sufficiently protected." 11 U.S.C. § 1521(b).

30. Sufficient creditor protections exist when, for example, creditors maintain the ability to bring their claims against the foreign debtor. *See Atlas Ship.*, 404 B.R. 726, 741–42 (Bankr. S.D.N.Y 2009) (finding sufficient protection where creditors could bring their claims in the foreign proceeding). Such protections also exist when creditors would benefit from the Debtor's increased liquidity. *See In re ENNIA Caribe Holding N.V.*, 596 B.R. 316, 323 (Bankr. S.D.N.Y. 2019) (finding sufficient protection where the only creditors stood to benefit from the repatriation).

31. This Court has also explained the concept of "sufficient protection" as embodying three basic principles: (1) "the just treatment of all holders of claims against the bankruptcy estate, [(2)] the protection of U.S. claimants against prejudice and inconvenience in the processing of

claims in the [foreign] proceeding, and [(3)] the distribution of proceeds of the [foreign] estate substantially in accordance with the order prescribed by U.S. law." *In re Comair Ltd.* (*in Liquidation*), No. 21-10298 (JLG), 2025 WL 3037797, at *7 (Bankr. S.D.N.Y. Oct. 30, 2025) (quoting *In re ENNIA*, 596 B.R. at 322). Here, Bermuda law satisfies all three factors.

32. The first factor, also called "[t]he just treatment factor," "is generally satisfied upon a showing that the applicable law provides for a comprehensive procedure for the orderly and equitable distribution of [the debtor]'s assets among all of its creditors." *In re Comair Ltd.* (*in Liquidation*), No. 21-10298 (JLG), 2025 WL 3037797, at *7 (Bankr. S.D.N.Y. Oct. 30, 2025) (quoting *In re Avanti Commc'ns Grp. PLC*, 582 B.R. 603, 615 (Bankr. S.D.N.Y. 2018). This Court has repeatedly found that "Bermuda has a sophisticated, fair and impartial legal system." *In re Millennium Glob. Emerging Credit Master Fund Ltd.*, 458 B.R. 63, 78–79 (Bankr. S.D.N.Y. 2011), *aff'd,* 474 B.R. 88 (S.D.N.Y. 2012); *see also In re Board of Directors of Hopewell Int'l Ins. Ltd.*, 275 B.R. 699 (S.D.N.Y.2002), *aff'g.* 238 B.R. 25 (Bankr.S.D.N.Y.1999). Here, the Settlement Agreement would benefit the Debtor's creditors (including U.S.-based creditors). *See* Clingerman Decl. at ¶ 21. The Settlement Funds would be utilized to fund the Debtor's operations and the Bermuda Proceeding, in which creditors have the ability to file claims and receive distributions in accordance with the claim process and their relevant claim priority. *Id.*

33. The second factor is satisfied "where creditors are given adequate notice of the timing and procedures for filing claims, and such procedures do not create additional burdens for a foreign creditor seeking to file a claim." *In re Comair Ltd.*, 2025 WL 3037797, at *8. Here, the Bermuda Proceeding provides a forum for the Debtor's creditors to submit claims regardless of their location. *See* Clingerman Decl. at ¶ 21.

34. The third factor is satisfied when the "foreign distribution scheme [is] 'substantially in accordance' with United States bankruptcy law; it does not have to mirror the United States distribution rules." *In re Ionica*, 241 B.R. 829, 836 (Bankr. S.D.N.Y. 1999). Here, the priority given to different classes of claims (the Debtor's policyholders are given priority over the Debtor's unsecured creditors) is consistent with the priority for claims of insureds in insurance liquidations in all 50 U.S. States. *See* Clingerman Decl. at ¶ 21; *see also, e.g.*, 215 Ill. Comp. Stat. Ann. 5/205 (West 2023); Del. Code Ann. tit. 18, § 5918 (West 2016); Alaska Stat. Ann. § 21.78.260 (West 2002).

35. For the foregoing reasons, the JPLs respectfully submit that the requested relief is proper under section 1521(a)(5) and (b).

**NOTICE**

36. Notice of this NTA Settlement Motion will be provided to: (a) the U.S. Trustee; (b) NTA's counsel, Michael C. Lee of Michael Lee Law, PLLC and Brant Martin of Wick Phillips; and (c) all parties requesting or entitled to receive notice in these chapter 15 cases pursuant to Bankruptcy Rule 2002. The Foreign Representatives submit that no other or further notice need be provided.

**NO PRIOR REQUEST**

37. No previous request for the relief requested herein has been made to this or any other court.

**CONCLUSION**

The Foreign Representatives respectfully request entry of the Proposed Order, substantially in the form attached hereto as **Exhibit A**, approving the Settlement and entrusting the Settlement Funds to the Foreign Representatives for distribution in the Bermuda Proceeding.

Date: June 26, 2026
New York, NY

Respectfully submitted,

*/s/ Sarah M. Schrag*

**CHAFFETZ LINDSEY LLP**
1700 Broadway, 33rd Floor
New York, NY 10019
Peter R. Chaffetz
Alan J. Lipkin
Sarah M. Schrag
Allison Scott
p.chaffetz@chaffetzlindsey.com
a.lipkin@chaffetzlindsey.com
a.scott@chaffetzlindsey.com

*Counsel for the Foreign Representative and Chapter 15 Debtor*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served by electronic mail via the Court's CM/ECF system to all parties authorized to receive electronic notice in this case on June 26, 2026.

*/s/ Sarah M. Schrag*
Sarah M. Schrag

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| *In re*<br><br>FLEMING INTERNATIONAL REINSURANCE LTD.,<br><br>Debtor in Foreign Proceeding.[1] | Chapter 15<br><br>Case No. 25-12353 (JPM) |

**DECLARATION OF MATHEW CLINGERMAN IN SUPPORT OF THE FOREIGN REPRESENTATIVES' MOTION FOR AN ORDER: (I) AUTHORIZING THE FOREIGN REPRESENTATIVES TO ENTER INTO NATIONAL TRANSPORTATION ASSOCIATES INC. SETTLEMENT AGREEMENT PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE; AND (II) ENTRUSTING SETTLEMENT FUNDS TO THE FOREIGN REPRESENTATIVES FOR DISTRIBUTION IN THE BERMUDA PROCEEDING**

Pursuant to 28 U.S.C. § 1746, I, Mathew Clingerman, hereby declare under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief:

1. I am over the age of 18 and, if called upon, could testify to all matters set forth in this declaration (this "**Declaration**"). I am making this Declaration in accordance with section 1515 of title 11 of the United States Code (the "**Bankruptcy Code**") and rule 1007(a)(4) of the Federal Rules of Bankruptcy procedure (the "**Bankruptcy Rules**"). I have reviewed the *Foreign Representatives' Motion for an Order: (1) Authorizing the Foreign Representatives to Enter into National Transportation Associates Inc. Settlement Agreement Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure; and (II) Entrusting Settlement Funds to the Foreign*

[1] The Debtor is a Bermuda company registered with the Registrar of Companies in Bermuda. The Debtor's registration number is 41041. The Debtor has its registered office located at Clarendon House, 2 Church Street, Hamilton, HM11, Bermuda.

*Representatives for Distribution in the Bermuda Proceeding* (the "**NTA Settlement Motion**"),[2] believe it to be true and accurate in all respects, and submit this Declaration in support thereof.

2. I am one of the three joint provisional liquidators of the above-captioned foreign debtor (the "**Debtor**"). The joint provisional liquidators of the Debtor are Simon Appell and Daniel Imison, of AlixPartners UK LLP ("**AlixPartners**") and I, of Kroll Bermuda Limited ("**Kroll**") (each a "**JPL**," and together, with myself, the "**JPLs**").

3. On October 21, 2025, the Bermuda Court issued the *Order in the Matter of Fleming International Reinsurance Ltd. and in the Matter of the Companies Act 1981 and in the Matter of the Insurance Act 1978* ("**JPL Appointment Order**"), appointing Daniel Imison, Simon Appell, and me as the Debtor's joint provisional liquidators with "light-touch" powers for the purposes of facilitating the Debtor's restructuring. Thus, the Debtor remained in control of its management subject to the JPLs' oversight.[3] Among other powers provided by the JPL Appointment Order is the JPLs' power to "to take such steps as the JPLs deem appropriate with respect to any settlements, compromises, or arrangements" and "sign off on or execute agreements . . . on behalf of [the Debtor]." JPL Appointment Order ¶¶ 1(f) and -(g). I understand that under the Bermuda Companies Act, which governs the JPLs' powers and duties, the JPLs must "be independent from the management of a company and its creditors" and "act in an even-handed fashion between creditors or members or groups of creditors or members."

[2] Capitalized terms used but not defined herein shall have the meanings ascribed such terms in the Verified Petition or the NTA Settlement Motion, as applicable.

[3] The JPL Appointment Order is attached as Exhibit B to the Chapter 15 Petition for Recognition of a Foreign Proceeding [Docket No. 1].

4. My knowledge of the facts set forth below is based on my review of the Debtor's books and records, my communications with the Debtor's management and counsel, and my work as one of the JPLs in the Bermuda Proceeding.

**The NTA Action**

5. On May 3, 2024, the Debtor's predecessor-in-interest JRG Reinsurance Company Ltd. ("**JRG Re**") filed an action against NTA in the United States District Court for the Northern District of Texas, Fort Worth Division, captioned *JRG Reinsurance Company, Ltd. v. National Transportation Associates, Inc.*, Case No. 4:24-cv-00394 (the "**Action**"). As stated in the Complaint, it is alleged that NTA had breached a series of Quota Share Reinsurance Agreements ("**QSRAs**") and related General Agency Agreements ("**GAAs**"). The complaint sought nearly $3.5 million in unremitted commission adjustments related to the QSRAs and over $500,000 for money overpaid by JRG Re into a loss fund controlled by NTA.

6. On July 8, 2024, NTA filed *Defendant's Answer, Affirmative Defenses, and Counterclaims to Plaintiff JRG Reinsurance Company, Ltd.'s Original Complaint*, Case No. 4:24-cv-00394, Docket No. 15, and that on October 10, 2025, NTA filed its *Defendant National Transportation Associate's Amended Answer, Affirmative Defenses, and Counterclaims to Plaintiff JRG Reinsurance Company, Ltd.'s Original Complaint*, Case No. 4:24-cv-00394, Docket No. 96 (the "**Amended Answer**"). As stated in the Amended Answer, NTA brought counterclaims for breach of contract totaling over $23 million based on JRG Re's alleged failure to accept all ceded liability from policies issued by NTA and for contribution to a settlement between NTA and a related party, United Specialty Insurance Company ("**USIC**").[4] Specifically, the complex

[4] Although the Debtor's pro rata participation in the relevant reinsurance agreement was only 13.33%, NTA has asserted claims against each participating reinsurer that its conduct resulted in NTA suffering in excess of $23 million in damages.

counterclaims concerned losses related to a $67 million dollar judgment against one of USIC's insured, Rai Trucking.

7. After a review of the Amended Answer, I believe NTA raised multiple colorable affirmative defenses that could have limited or eliminated JRG Re's recovery, including that JRG Re breached the QSRAs and GAAs first by refusing to accept ceded liability and also that the commission provisions in the QSRAs upon which JRG Re relies for its affirmative claims are illegalbased on interpretations of the Texas and California Insurance Codes.

8. On October 24, 2025, the Debtor filed *Plaintiff JRG Reinsurance Company Ltd.'s Answer to Defendant's Amended Counterclaims*, Case No. 4:24-cv-00394, Docket No. 105.

**The Settlement Negotiations**

9. In recent months, the JPLs, in consultation with the Debtor's operating personnel and outside counsel, assessed the strength of JRG Re's case in light of the Chapter 15 Case and in exercise of its sound business judgment determined that the risk associated with NTA's counterclaims and the potential costs of litigating a complex reinsurance dispute are too great, such that settlement is in the best interest of the Debtor's estate. In mid-April 2026, the Debtor and NTA entered into settlement discussions.

10. The Settlement Agreement is the product of genuine arm's-length negotiations. After multiple rounds of negotiations, the settlement amount was approved by the JPLs, who have a duty to the Debtor's creditors.

**The Settlement Agreement**

11. After productive settlement discussions, on May 29, 2026, NTA and the Debtor entered into the Settlement Agreement, whereby NTA agreed to pay the Debtor $250,000 (the "**Settlement Payment**") in exchange for a mutual release of liabilities. Within five days of the

Debtor's receipt of the Settlement Payment, the Debtor and NTA will execute, and NTA will file a joint motion to dismiss the Action with prejudice and without costs to either party.

12. As stated in the Settlement Agreement, the Debtor will receive the Settlement Payment and a full and irrevocable release and discharge of all liabilities by reason of any claim or matter whatsoever related to the Commission Provisions, the Dispute, and/or the Litigation (as defined in the Settlement Agreement) in exchange for a mutual release against NTA. See Settlement Agreement at ¶¶ 1-3. Thus, the JPLs believe that, in light of the substantial size of the counterclaims (allegedly worth at least 13.33% of over $23 million and possibly more), the $250,000 settlement is a reasonable outcome for the Debtor.

**The Proposed Settlement Falls Within the Range of Reasonableness and Should be Approved**

13. First, if the Action is litigated to judgment, the potential loss could be greater than 13.33% of over the $23 million in claims alleged in NTA's counterclaims because of the costs of litigation and other factors; whereas, the potential benefit to the Debtor would be at most the $4 million in claims alleged in the Complaint. Moreover, the JPLs, Debtor's operating personnel, and outside counsel believe that the fact that the Settlement will provide an immediate, definitive resolution, shielding the Debtor from massive potential liability and providing an immediate cash infusion, weighs strongly in favor of settlement. Upon receipt, the Settlement Funds will be used to fund the Debtor's current operations and pay administrative costs and creditors in the Bermuda Proceeding.

14. Second, the issues presented in the claims and counterclaims involve a series of complex reinsurance agreements, which in my experience, will very likely result in protracted and expensive litigation. The litigation has been ongoing for more than two years, and yet the parties had not even engaged in dispositive motion practice or completed discovery, including numerous

depositions, in the Action prior to the Debtor reaching its settlement with NTA. Thus, the cost and delay involved with reaching a final judgment in the Action, in my opinion, would be substantial, and more importantly, would require the Debtor to divert substantial people and resources away from the Debtor's efforts to reach finality in the Bermuda Proceeding.

15. Third, the JPLs approved the Settlement Agreement because we believe that it is in the best interest of the Debtor and its creditors. Among other things, it is not expected that creditors will be paid in full, meaning any costs of litigation will reduce funds available for distribution to creditors. Thus, the Settlement Agreement offers a clear and definitive resolution of pending and anticipated litigation thereby conserving estate resources.

16. Fourth, as of the date of this filing, the Debtor and the JPLs are unaware of any parties in interest who opposes the Settlement Agreement, which was filed in the Bermuda Proceeding on or about June 9, 2026 and sanctioned and approved by court order in that proceeding on June 26, 2026.

17. Fifth, I understand that the Debtor's counsel in support of the settlement, Chaffetz Lindsey LLP, has both years of bankruptcy experience and has engaged in volumes of complex commercial litigation and reinsurance disputes.

18. Sixth, as set forth in the Settlement Agreement, there is a mutual release and discharge for both the Debtor and NTA, and their respective past, present, and future officers and directors, related to the Commission Provisions, the Dispute, and/or the Litigation (all as defined in the Settlement Agreement). The releases and discharges include, among other things, all of NTA's potential counterclaims against the Debtor, including the at least 13.33% of over $23 million claims related to the Rai Trucking judgment.

19. Seventh, as stated above, the Settlement Agreement is the product of genuine arm's-length negotiations. After multiple rounds of negotiations, the settlement amount was approved by the other JPLs and me, who each have a duty to the Debtor's creditors.

20. In sum, the JPLs have exercised sound business judgment in approving the Settlement, which is well within the range of reasonableness.

**There are Sufficient Safeguards to Entrust the Settlement Funds to the Foreign Representatives**

21. The JPLs will direct the Settlement Funds to be transferred to the Debtor's Bermuda Account for use in the Debtor's operations and payment of administrative expenses and distributions in the Bermuda Proceeding. I believe there are sufficient creditor protections in place to do so because, for example, the Debtor's creditors maintain the ability to bring their claims against the Debtor in the Bermuda Proceeding and the Debtor's creditors will benefit from the Debtor's increased liquidity. Indeed, the Settlement Agreement would benefit the Debtor's creditors (including U.S.-based creditors) because, among other things, the Settlement Funds will be utilized to fund the Debtor's operations and the Bermuda Proceeding, in which creditors have the ability to file claims and receive distributions in accordance with the claim process and their relevant claim priority. In fact, the Bermuda Proceeding provides a forum for the Debtor's creditors to submit claims regardless of their location. Furthermore, I understand that the priority given to different classes of claims (the Debtor's policyholders are given priority over the Debtor's unsecured creditors) is consistent with the priority for claims of insureds in insurance liquidations in all 50 U.S. States.

**WHEREFORE**, pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: Hamilton, Bermuda
June 26, 2026

*/s/ Mathew Clingerman*___
Mathew Clingerman

# EXHIBIT A

**(Proposed Order)**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| *In re*<br><br>FLEMING INTERNATIONAL REINSURANCE LTD.,<br><br>Debtor in Foreign Proceeding.[1] | Chapter 15<br><br>Case No. 25-12353 (JPM) |

**[PROPOSED] ORDER: (I) AUTHORIZING THE FOREIGN REPRESENTATIVES TO ENTER INTO NATIONAL TRANSPORTATION ASSOCIATES INC. SETTLEMENT AGREEMENT PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE; AND (II) ENTRUSTING SETTLEMENT FUNDS TO THE FOREIGN REPRESENTATIVES FOR DISTRIBUTION IN THE BERMUDA PROCEEDING**

Upon consideration of the *Foreign Representatives' Motion for an Order: (1) Authorizing the Foreign Representatives to Enter into National Transportation Associates Inc. Settlement Agreement Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure; and (II) Entrusting Settlement Funds to the Foreign Representatives for Distribution in the Bermuda Proceeding* [Docket No. ___] (the "**NTA Settlement Motion**")[2] of the Foreign Representatives of the above captioned debtor (the "**Debtor**" for entry of an order (i) authorizing and approving the settlement agreement between the Debtor and National Transportation Associates Inc. ("**NTA**"); and (ii) entrusting the proceeds of the Settlement to the JPLs for transfer to the Debtor's Bermuda Account and use by the Debtor to fund operations and for payment of administrative claims and/or

[1] The Debtor is a Bermuda company registered with the Registrar of Companies in Bermuda. The Debtor's registration number is 41041. The Debtor has its registered office located at Clarendon House, 2 Church Street, Hamilton, HM11, Bermuda.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed such terms in the Verified Petition or the NTA Settlement Motion , as applicable.

distribution in the Debtor's Bermuda Proceeding pending in the Bermuda Court; and the Court having jurisdiction to consider the NTA Settlement Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and consideration of the NTA Settlement Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. § 1410; and due and proper notice of the NTA Settlement Motion having been provided, and it appearing that no other or further notice need be provided; and the Court having reviewed the NTA Settlement Motion and there being no opposition thereto; and the Court having determined that the legal and factual bases set forth in the NTA Settlement Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the NTA Settlement Motion is in the best interests of the Debtor, its creditors, and all parties in interest; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. The NTA Settlement Motion is granted to the extent set forth herein.

2. Pursuant to Bankruptcy Rule 9019, the JPLs are authorized to enter into the Settlement Agreement substantially in the form attached as Exhibit B to the NTA Settlement Motion.

3. Pursuant to Section 1521(b) of the Bankruptcy Code, the Settlement Funds are entrusted to the JPLs for transfer to the Debtor's Bermuda Account, and the Debtor may use the Settlement Funds to fund operations and for payment of administrative claims and/or distribution in the Debtor's Bermuda Proceeding.

4. The Foreign Representatives are authorized to execute, deliver, and fully perform any and all obligations, instruments, documents, and papers related to and to take any and all

actions reasonably necessary or appropriate to consummate, complete, execute, and implement the Settlement Agreement in accordance with the terms and conditions of the Settlement Agreement.

5. This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Order.

Dated: July ___, 2026
New York, NY

________________________________________
HONORABLE JOHN P. MASTANDO III
UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT B

**(Settlement Agreement)**

**Execution Version**

# CONFIDENTIAL SETTLEMENT AGREEMENT

This Confidential Settlement Agreement ("Settlement Agreement") is made May 29, 2026 between National Transportation Associates, Inc. ("NTA"), on the one hand, and Fleming International Reinsurance Ltd. ("FIRe"), on the other hand. Each of NTA and FIRe is referred to as a "Party" and together as the "Parties."

**WHEREAS,** NTA and FIRe (formerly known as JRG Reinsurance Company Ltd.) entered into quota share reinsurance agreements and general agency agreements between September 1, 2013 and May 1, 2018 (collectively, the "Agreements");

**WHEREAS,** FIRe has asserted claims that is entitled to payments from NTA under the terms of the Agreements (the "FIRe Claims"), including claims under the provisions in the Agreements addressing the payment of commissions to and adjustments to commissions paid to NTA (the "Commission Provisions");

**WHEREAS,** NTA has asserted claims that it is entitled to payments from FIRe under the terms of the Agreements and arising out of losses relating to Rai Trucking (the "NTA Claims");

**WHEREAS,** the FIRe Claims and the NTA Claims are referred to together herein as the Dispute;

**WHEREAS,** FIRe filed suit against NTA in the United States District Court for the Northern District of Texas in an action styled *JRG Reinsurance Company, Ltd. v. National Transportation Associates, Inc., d/b/a NTA General Insurance Agency*, Case No. 4:24-cv-00394-P, and NTA has asserted counterclaims against FIRe in the same action (the "Litigation");

**WHEREAS,** to avoid the risks and uncertainty of litigation, the Parties now desire to settle the Dispute and the Litigation;

**NOW, THEREFORE,** in consideration of the mutual benefits to be received by the Parties and the mutual covenants and agreements herein contained, the Parties hereby agree as follows:

**Execution Version**

1. Within twenty (20) days of receiving notice from FIRe of sanction of this Settlement Agreement by the Supreme Court of Bermuda and authorization to enter this Settlement Agreement from the United States Bankruptcy Court for the Southern District of New York whichever comes later, NTA shall pay to FIRe, via wire transfer to an account designated by FIRe, the total amount of $250,000 (two hundred fifty thousand dollars) in full and final settlement of the Dispute and the Litigation (the "Settlement Payment").

2. FIRe, on behalf of itself, its predecessors, and its respective past, present, and future parents, subsidiaries, affiliates, agents, intermediaries, brokers, employees, officers, directors, shareholders, joint provisional liquidators, successors and assigns (hereinafter the "FIRe Releasors") hereby irrevocably releases and discharges NTA, its predecessors, and its respective past, present, and future parents, subsidiaries, affiliates, agents, intermediaries, brokers, employees, officers, directors, shareholders, successors and assigns (hereinafter the "NTA Releasees") from any and all liabilities, including but not limited to, all obligations, adjustments, executions, offsets, actions, causes of action, suits, debts, sums of money, accounts, reckonings, bonds, bills, covenants, contracts, controversies, agreements, promises, damages, judgments, claims, demands, duties, doings, omissions, costs, expenses and/or losses whatsoever, whether known or unknown, reported or unreported, discoverable or undiscoverable, and whether arising in the past, present or future, which FIRe and/or the FIRe Releasors ever had, now have, or hereafter may have, whether grounded in law or equity, in contract or in tort or otherwise, against the NTA Releasees, by reason of any claim or matter whatsoever arising under or out of or relating to the Commission Provisions, the Dispute, and/or the Litigation.

3. The NTA Releasees hereby irrevocably release and discharge the FIRe Releasors from any and all liabilities, including but not limited to, all obligations, adjustments, executions,

offsets, actions, causes of action, suits, debts, sums of money, accounts, reckonings, bonds, bills, covenants, contracts, controversies, agreements, promises, damages, judgments, claims, demands, duties, doings, omissions, costs, expenses and/or losses whatsoever, whether known or unknown, reported or unreported, discoverable or undiscoverable, and whether arising in the past, present or future, which NTA and/or the NTA Releasees ever had, now have, or hereafter may have, whether grounded in law or equity, in contract or in tort or otherwise, against the FIRe Releasors, by reason of any claim or matter whatsoever arising under or out of or relating to the Commission Provisions, the Dispute, and/or the Litigation.

4. The Parties acknowledge and agree that this Settlement Agreement shall not become effective unless and until it is sanctioned by the Supreme Court of Bermuda in the FIRe liquidation proceeding (2025: No. 270) and authorized by the United States Bankruptcy Court for the Southern District of New York in the proceeding styled *In re Fleming International Reinsurance Ltd.*, Case No. 25-12353 (JPM).

5. FIRe and NTA each represent and warrant that it has not assigned and will not assign to any third party any claims, debts, liabilities, demands, obligations, costs, actions or causes of action arising under or out of or relating to the Agreements, the Dispute, and/or the Litigation.

6. FIRe and NTA each covenant and promise to not commence any claim, lawsuit, arbitration or other proceeding against the other relating to any of the liabilities released in Paragraphs 2 and 3 above.

7. Notwithstanding anything in Paragraphs 2, 3 and 6 above, the Parties do not release their rights to enforce this Settlement Agreement.

8. The Parties agree that this Settlement Agreement sets forth a compromise and shall never at any time for any purpose be considered an admission of liability or responsibility on the

part of either Party regarding any aspect of the Agreements, the Dispute, and the Litigation. The Parties further agree that neither this Settlement Agreement nor any of its terms shall be admissible in any action, arbitration, or proceeding other than one to enforce the terms of this Settlement Agreement.

9. Within five (5) days of FIRe's receipt of the Settlement Payment pursuant to Paragraph 1, FIRe and NTA shall execute, and NTA shall file a joint motion to dismiss the Litigation between FIRe and NTA, with prejudice and without costs to either party.

10. From and after the effective date of this Settlement Agreement, each of the Parties shall execute such documents and other papers and take such further actions as may be reasonably required to carry out the provisions hereof.

11. The terms of this Settlement Agreement, including but not limited to the Settlement Payment (including but not limited to its existence and amount), and the scope of the Parties' respective releases, as well as the course of negotiations leading to this Settlement Agreement, shall be deemed confidential (the "Confidential Information"). The Confidential Information does not include the mere fact that FIRe and NTA have resolved the Dispute and the Litigation. Confidential Information shall not be disclosed to any person, except: (1) by FIRe to the Supreme Court of Bermuda and the United States Bankruptcy Court for the Southern District of New York to seek approval of this Settlement Agreement; (2) by the disclosing Party to its own employees, lenders, officers, directors, accountants, auditors, regulators, liquidators, or subsidiary, affiliate or parent companies; (3) as required by law or court order; (4) to the extent necessary to comply with any government regulatory requirement or any independent corporate auditing requirement; (5) pursuant to the prior written consent of the other Party; or (6) in an action to enforce this Settlement Agreement. In the event a Party receives a request for disclosure of Confidential Information, the

Party agrees to promptly notify the other Party of the request and to cooperate and assist in obtaining a court order to ensure continuing confidentiality of the Confidential Information. The cooperating and/or assisting Party shall not be required to file any motion.

12. All notices concerning this Settlement Agreement or the subject matter thereof shall be sent by both (1) registered or certified mail return receipt requested and (2) email, to the following individuals, or as the Parties may subsequently direct in writing:

**To FIRe:**

**Certified Mail**

c/o Conyers Corporate Services (Bermuda)
Limited, Clarendon House, 2 Church Street,
Hamilton, Pembroke, HM11, Bermuda

**Via Email**

Attention: Marty Dolan, Director, Special Committee Chair
**Email: martinwdolan@yahoo.com**

Attention: Scott Millimet, Director, Special Committee Member
**Email: 923smilli@gmail.com**

**To NTA:**

**Certified Mail**

c/o Michael C. Lee
Michael Lee Law, PLLC
10346 Rosser Road
Dallas, TX 75229

**Via Email**

Attention: Michael Lee, counsel
**Email:** mike@mlee-law.com

Attention: Brant Martin, counsel
**Email:** Brant.Martin@wickphillips.com

13. This Settlement Agreement shall inure to the benefit of and bind FIRe, NTA, and their respective successors, assigns, parents, subsidiaries, liquidators, affiliates, predecessors, officers, directors, agents, employees, shareholders, representatives, and attorneys. This Settlement Agreement is not intended to confer any rights or benefits upon persons or entities other than the foregoing Parties.

14. Each of the Parties acknowledges that it has entered into this Settlement Agreement in reliance upon its own independent investigation and analysis of the Agreements and its respective rights and obligations thereunder, and not on the basis of any representation made or not made by the other Party hereto, except those representations and warranties contained in this Settlement Agreement. Each of the Parties further acknowledges that it has read this Settlement Agreement, that it has had the opportunity to discuss it with legal counsel, and that it fully understands all of the terms herein.

15. This Settlement Agreement shall constitute the entire agreement between the Parties pertaining to the subject matter hereof and supersedes any and all prior or contemporaneous understandings or agreements relating to the matters being released under this Settlement Agreement. No supplement, modification, waiver or termination of this Settlement Agreement shall be binding or enforceable unless executed in writing by the Parties to be bound thereby. No delay, omission or forbearance on the part of any Party to this Settlement Agreement in exercising or enforcing any right, power or remedy under this Settlement Agreement shall impair such right, power or remedy or operate as a waiver thereof. The single or partial exercise or enforcement of such right, power or remedy shall not preclude any other or further exercise or enforcement thereof or of any other right, power or remedy. The rights, powers and remedies provided in this

**Execution Version**

Settlement Agreement are cumulative and not exclusive of any rights, powers and remedies provided by law.

16. Should any part, term, or provision of this Settlement Agreement be declared or determined by any court or body of competent jurisdiction to be illegal, invalid, or unenforceable, excepting NTA's obligation to make the settlement payment in Paragraph 1 above and the releases in Paragraphs 2 and 3 above, the legality, validity, and enforceability of the remaining parts, terms, or provisions shall not be affected thereby and said illegal, unenforceable or invalid part, term or provision shall not be deemed to be a part of this Settlement Agreement.

17. The language of this Settlement Agreement is the result of negotiation between all parties hereto, and any ambiguities in said language shall not be construed against or in favor of any Party or Parties hereto.

18. This Settlement Agreement shall be governed by and construed and interpreted in accordance with the laws of the State of New York. Any action or proceeding arising out of or relating to the provisions of this Settlement Agreement shall be brought in the United States Bankruptcy Court for the Southern District of New York in the proceeding styled *In re Fleming International Reinsurance Ltd.*, Case No. 25-12353 (JPM) or, if jurisdiction in that proceeding is not available, in a state or federal court in New York, New York. The Parties waive any right to a trial by jury in any such action or proceeding. The Parties agree not to include any employee, officer, or director of the other Party, or its affiliates, as a party in any such action or proceeding. In any litigation arising out of or relating to this Settlement Agreement, the prevailing party shall be entitled to recover its reasonable attorneys' fees and costs relating to the litigation and the enforcement of any judgment, including an application for attorneys' fees and costs.

19. This Settlement Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same instrument. Counterparts may be delivered via electronic mail (including pdf or any electronic signature complying with the U.S. Federal ESIGN Act of 2000, *e.g.*, www.docusign.com), or other transmission method, and any counterpart so delivered shall be deemed to have been duly and validly delivered and be valid and effective for all purposes.

[Signatures on the following page]

By executing this Settlement Agreement below, the Parties understand that they are entering into a binding and enforceable contract subject to the above terms and conditions.

| | |
|---|---|
| **FLEMING INTERNATIONAL REINSURANCE LTD.** | **NATIONAL TRANSPORTATION ASSOCIATES, INC.** |
| Signed by: [signature] 6A86DBCFB6724D8... | Signed by: YOGESH KUMAR 7D224825EC5B483... |
| By: Marty Dolan | By: Yogesh Kumar |
| Title: Director, Special Committee Chair | Title: President |
| Date: 6/5/2026 | Date: 5/29/2026 |